E-FILED
Monday, 20 April, 2020  01:31:39 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| CORY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:20-cv-02054-CSB-EIL |
| | ) | |
| CITY OF URBANA, ILLINOIS; a municipal | ) | |
| corporation; THE CITY OF CHAMPAIGN, | ) | JUDGE COLIN S. BRUCE |
| ILLINOIS, a municipal corporation; JEFFERY | ) | |
| STEINBERG; DUANE SMITH; MATTHEW | ) | |
| BAIN; ELIZABETH ALFONSO; DAVE | ) | MAGISTRATE JUDGE ERIC I. LONG |
| ROESCH; MICHAEL CERVANTES; JAMES | ) | |
| KERNER; MATTHEW QUINLEY; JAY | ) | |
| LOSCHEN; DAVE GRIFFET, and | ) | CITY OF URBANA DEFENDANTS |
| UNKNOWN EMPLOYEES OF THE CITY OF | ) | demand trial by jury |
| URBANA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ANSWER TO PLAINTIFF'S COMPLAINT AT LAW AND AFFIRMATIVE DEFENSES
WITH JURY DEMAND BY DEFENDANTS CITY OF URBANA,
JEFFREY STEINBERG, DUANE SMITH, MATTHEW BAIN,
ELIZABETH ALFONSO, AND MATTHEW QUINLEY**

NOW COME the Defendants, THE CITY OF URBANA, ILLINOIS, a municipal corporation, JEFFERY STEINBERG, DUANE SMITH, MATTHEW BAIN, ELIZABETH ALFONSO, and MATTHEW QUINLEY (hereinafter referred to collectively as "the City of Urbana Defendants"), by and through one of their attorneys, WILLIAM W. KURNIK, and, for their answer to the Complaint at Law of the Plaintiff, Cory Jackson, state as follows:

### Introduction

1. Plaintiff Cory Jackson was wrongfully charged and prosecuted for the murder of Martez Taylor and for discharging a firearm, crimes which he did not commit.

**<u>ANSWER:</u>**     Defendants deny that the Plaintiff was "wrongfully" charged and deny that
he did not commit the offenses for which he was charged. Further answer,
Defendants admit the remaining allegations contained in this paragraph.

2. These charges were the direct result of serious misconduct by officers of the Urbana Police Department tasked with investigating Mr. Taylor's murder.

**ANSWER:**   Deny

3. Defendant Officers knew within hours of the shooting that Keith Campbell was the shooter. Yet, Defendant Officers disregarded this information and proceeded to obtain knowingly false witness statements implicating Cory Jackson.

**ANSWER:**   Deny

4. Defendant Officers also fabricated police reports and withheld evidence that would have demonstrated Plaintiff's innocence.

**ANSWER:**   Deny

5. No physical or forensic evidence ever inculpated Mr. Jackson. Mr. Jackson never confessed to this crime and maintained his innocence throughout his prosecution.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief concerning the truth of the allegations contained in this paragraph.

6. Due to these baseless charges, Mr. Jackson spent 14 months in custody awaiting trial until he was ultimately acquitted and cleared of these charges on October 11, 2019. This lawsuit seeks redress for his injuries.

**ANSWER:**   Defendants deny that the charges were "baseless" but admit the remaining allegations contained in this paragraph.

### Jurisdiction and Venue

7. This Court has federal question jurisdiction of this action pursuant to 28 U.S.C. §§1331 and 1343. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear and decide claims arising out of state law.

**ANSWER:**   Admit

8. Venue is proper in the Central District of Illinois under 28 U.S.C. § 1391(b). On information and belief, all defendants reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

**ANSWER:**   Admit

## Parties

9. Cory Jackson is a 32-year-old United States citizen who, at all times relevant hereto, resided in the Central District of Illinois.

**ANSWER:**   Admit

10. Defendant City of Urbana is a municipal entity organized under the laws of Illinois.

**ANSWER:**   Admit

11. Defendant City of Champaign is a municipal entity organized under the laws of Illinois.

**ANSWER:**   Admit

12. At all times relevant hereto, Defendants Jeffrey Steinberg, Duane Smith, Matthew Bain, Elizabeth Alfonso, Michael Cervantes, Dave Roesch, Matthew Quinley, Jay Loschen, and James Kerner were Urbana Police Officers acting under color of law within their authority as duly appointed officers by the Urbana Police Department.

**ANSWER:**   Admit

13. At all times relevant hereto, Defendant Dave Griffet was a Champaign Police Officer acting under color of law within his authority as a duly appointed officer by the Champaign Police Department.

**ANSWER:**   Admit

14. At all times relevant hereto, Unknown Employees of the City of Urbana acted under color of law within their authority as duly appointed officers by the Urbana Police Department.

**ANSWER:**   Deny

15. Jeffrey Steinberg, Duane Smith, Matthew Bain, Elizabeth Alfonso, Michael Cervantes, Dave Roesch, Matthew Quinley, David Giffet, James Kerner, Jay Loschen, and Unknown Employees of the City of Urbana are referred to herein collectively as "Defendant Officers." At all times relevant hereto, Defendant Officers were acting in their individual capacities and under color of law and within the scope of their employment.

**ANSWER:**   Admit

## The Murder of Martez Taylor

16. At approximately 12:42 am on July 21, 2018, Martez Taylor was shot and killed in the driveway of a townhome in the 1900 block of East Florida Avenue in Urbana, Illinois.

**ANSWER:**   Admit

17. Just prior to the shooting, Mr. Taylor got into a physical fight with Keith Campbell during a party at the townhome, after he accidentally bumped into Campbell, who was heavily intoxicated at the time. During this entire exchange, Cory Jackson was on the back patio with other attendees of the party.

**ANSWER:**   Defendants admit that Taylor got into a physical fight with Keith Campbell during a party at the townhome, but are without knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in this paragraph.

18. After Taylor and Campbell exchanged blows, Campbell exited out the back door of the townhome while Taylor exited out the front door.

**ANSWER:**   Defendants admit that Campbell and Taylor exited the townhome, but are without knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in this paragraph.

19. Taylor walked over to his cousin Malaia Turner's Mitsubishi Gallant that was parked in the driveway. Turner got into the rear driver seat of the car and shut the door.

**ANSWER:**   Admit

20. Not long after Taylor got in the back seat of the car, shots were fired into the rear driver side window of the Mitsubishi, striking Taylor three times. The shooter fled immediately after the last shot fired.

**ANSWER:**   Defendants admit that while Taylor was sitting in the back seat, shots were fired into the rear driver's side window of the Mitsubishi striking Taylor three times. Further answering, Defendants are without knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in this paragraph.

21. Mr. Jackson had no involvement in Taylor's murder. Mr. Jackson was walking outside to his car as the shots were fired.

**ANSWER:**   Deny

22. Minutes after the shooting, METCAD dispatched to officers that a man had been shot at 1905 East Florida Avenue, and Urbana Police Officers Paige Bennett, Sarah Links, Bryan Fink, John Franquemont, Sergeant Jennifer Difanis and other unknown officers responded to the crime scene.

**ANSWER:**   Admit

4

23. While officers were arriving at the scene, Taylor was being transported to Carle Hospital in a white Chrysler 300 driven by Vincent Mosley.

**ANSWER:**   Admit

24. The white Mitsubishi Gallant in which Taylor was shot was towed to 704 Glover Street to be processed for evidence.

**ANSWER:**   Admit

25. Several Urbana police officers responded to Carle Hospital, including Officers Jared Hurley and Walker, Defendant Sergeant Jay Loschen, and Defendant Detectives Matthew Bain and Matthew Quinley. Present at the hospital were also unknown University of Illinois police officers.

**ANSWER:**   Admit

26. Mosley parked his car in front of the ambulance bay at Carle Hospital. Officer Hurley helped get Taylor out of the car and into the hospital. Taylor died shortly thereafter.

**ANSWER:**   Admit

27. Defendant Loschen told Defendant Bain that he would like to photograph and process the Chrysler 300, and then return it to Mosley. Defendant Bain permitted this action.

**ANSWER:**   Admit

28. Defendant Loschen photographed and inspected Mosley's Chrysler 300. After his search, Defendant Loschen immediately released the vehicle to Mosley and Mosley left the area. Defendant Loschen released this vehicle before it was ever tested for forensic evidence or examined by Mr. Jackson or his attorney.

**ANSWER:**   Defendants admit that Loschen photographed and inspected the referred to vehicle and that the vehicle was ultimately released to Mosley before it was tested or examined by the Plaintiff or his attorney. Defendants deny the remaining allegations contained in this paragraph.

### Defendants Knowingly Obtain an Unreliable Account from Malaia Turner

29. On the night of the shooting, while at Carle Hospital, Defendants Bain, Quinley, and Steinberg spoke with Malaia Turner, Taylor's cousin. Ms. Turner told Defendant Bain and other Defendant Officers that she did not actually have the opportunity to see the shooter but that she believed it was Jackson.

**ANSWER:**   Defendants admit that at the hospital on the night of the shooting, Defendants Bain and Quinley, and later that day Steinberg, spoke with

Malaia Turner who was the cousin of Taylor. Further answering, Defendants deny the remaining allegations contained in this paragraph.

30. Based on Turner's statements indicating her lack of actual personal knowledge and their knowledge that her account was inconsistent with the physical evidence, Defendant Officers knew that Ms. Turner's speculation regarding Jackson being the shooter was unreliable and did not create probable cause.

**ANSWER:**   Deny

31. In fact, even today, the state's current position is that Campbell was the true killer and he is a wanted fugitive.

**ANSWER:**   Defendants admit that Campbell is a wanted fugitive, but deny the remaining allegations contained in this paragraph.

32. Nevertheless, Defendant Officers had Ms. Turner provide them with a Facebook photograph of Jackson. Defendants Bain and Officer Joseph Cassidy issued a stop order to neighboring police agencies, directing that Mr. Jackson be located and arrested.

**ANSWER:**   Defendants admit that Turner provided them with a Facebook photograph of Jackson, but deny the remaining allegations contained in this paragraph.

33. Prior to the investigation of Taylor's murder, Cory Jackson was known to both Defendants Loschen and Quinley.

**ANSWER:**   Admit

34. On information and belief, Defendant Officers met with Malaia Turner multiple times in the lead-up to the trial, continuing to pressure her to find more witnesses to recite the same story she gave implicating Mr. Jackson. Upon information and belief, on each occasion, Defendant Officers fed Malaia Turner information in an effort to build up her credibility.

**ANSWER:**   Deny

### Defendants Bury the Identity of "Witness A"

35. During the early morning hours on the night the shooting occurred, July 21, 2018, Defendant Officers received information from a witness to Taylors's murder that Campbell was the shooter and Mr. Jackson was not involved. Defendant Officers have concealed the identity of this witness; therefore, he or she will be referred to herein as "Witness A".

**ANSWER:**   Deny

36. Specifically, Champaign Police Detective David Griffet received a phone call on July 21, 2018, from Witness A that Keith Campbell shot Taylor at a party in Urbana.

**ANSWER:**    Admit

37. Defendant Griffet then shared this information with Defendant Officers. However, since Witness A's account did not match Defendant Officers' false hypothesis that Mr. Jackson was the shooter, they disregarded the account of Witness A and buried his or her identity even though it exculpated Mr. Jackson.

**ANSWER:**    Deny

38. In addition, Defendant Griffet then fabricated a police report claiming that he did not know the identity of Witness A. Even after Mr. Jackson's criminal defense attorney obtained a court order compelling Defendant Griffett to disclose the identity of Witness A, Defendant Griffett still failed to disclose this critical and exculpatory information.

**ANSWER:**    Deny

39. Rather than properly investigate the shooting and pursue Kevin Campbell as the only legitimate suspect, Defendant Officers made a deliberate plan to suppress Witness A's identity and proceed with knowingly false statements from witnesses implicating Mr. Jackson in the murder.

**ANSWER:**    Deny

**Defendants Fabricate Statements from Yasmine Nichols and Shakeyla McCoy**

40. In the days that followed, Defendant Steinberg, Bain, Quinley, Cervantes, Alfonso, and Smith interviewed a number of witnesses, including Wendy Driver, Wardell Lawrence, Vincent Mosley, and Dejermaine Pettis, none of whom could identify the shooter.

**ANSWER:**    Defendants admit that certain of the Urbana Defendants interviewed the referred to witnesses who could not identify the shooter, but deny the remaining allegations contained in this paragraph.

41. Upon information and belief, one or more of these witnesses, including Wendy Driver, told Defendant Officers that Malaia Turner and her sister were not in a position to actually see the shooting of Turner.

**ANSWER:**    Deny

42. During the investigation, Defendants Steinberg, Bain, Quinley and other Defendant Officers procured through improper means the knowingly false statements from Malaia Turner, Yasmine Nichols, Shakeyla McCoy, and Alisha Turner.

**ANSWER:**    Deny

### The Coerced Statement of Yasmine Nichols

43. On July 24, 2018, at approximately 12:00 p.m., Defendants Alfonso and Smith interviewed Yasmine Nichols at the Urbana Police Department, provided her with a single photo of Mr. Jackson, and coerced Ms. Nichols into providing a knowingly false account that now claimed Mr. Jackson was not the shooter, but that he was an accomplice who handed the shooter the gun.

**ANSWER:**     Defendants deny that Nichols was coerced into providing a knowingly false account, but admit the remaining allegations contained in this paragraph.

44. Shortly thereafter, on September 17, 2019, Yasmine Nichols recanted the false statement that was coerced by Defendant Officers. Ms. Nichols said that she did not see Mr. Jackson with the gun that night, nor did she see Jackson pass a gun to anyone.

**ANSWER:**     Defendants deny that Nicholas had given a false statement to the Defendants or that she was coerced into giving any statement; deny that her recantation occurred "shortly" thereafter; but admit the remaining allegations contained in this paragraph.

45. On or about September 19, 2019, Allen Williams and Yasmine Nichols recorded Facebook live videos indicating that witnesses were paid, threatened, or coerced into providing a statement implicating Jackson as the shooter. Defendant Officers were aware of these Facebook videos, yet continued to try and rely upon the false account of Nichols which they had procured in order to continue the criminal proceedings against Mr. Jackson.

**ANSWER:**     Deny

### The Coerced Statement of Shakeyla McCoy

46. Much like the false statement Defendant Officers procured from Ms. Nichols, Defendant Officers also procured a similar false statement of involvement from her sister, Shakeyla McCoy.

**ANSWER:**     Defendants admit that Shakeyla McCoy gave a statement regarding the involvement of the Plaintiff in the shooting, but deny the remaining allegations contained in this paragraph.

47. On July 24 and 25 of 2018, Ms. McCoy told Defendants Bain and Steinberg that she was not in a position to be able to make any identifications with respect to the shooting of Taylor. Nevertheless, Defendants Bain and Steinberg fabricated a statement from Ms. McCoy that she witnessed Campbell shoot Taylor after Mr. Jackson handed him the gun.

**ANSWER:**     Deny

48. On September 20, 2019, McCoy recanted the false statement Defendants Bain and Steinberg procured and admitted that did not actually see Jackson hand anyone a gun that evening.

**ANSWER:**   Deny that McCoy had previously given a false statement or that the Defendants had procured her prior statement but admit the remaining allegations contained in this paragraph.

## The Fabrication of Malaia Turner's "Revised" Account

49. On September 16, 2019, Malaia Turner recanted her previous statement to the police and told Defendant Officers that, contrary to her speculation on the night of the shooting, she in fact did not see Mr. Jackson shoot the gun. However, Malaia Turner told Defendant Officers that she "did not want to hurt the chances of a conviction."

**ANSWER:**   Deny

50. Upon information and belief, Defendant Officers then fed Malaia Turner information about the statements made by other witnesses in their investigation, thereby encouraging her to provide another false account: this time, a false account that Mr. Jackson handed the gun to the shooter rather than actually fired the gun himself.

**ANSWER:**   Deny

51. Upon information and belief, Malaia Turner changed her statements about the nature of Mr. Jackson's supposed involvement in Turner's death no less than four times before Mr. Jackson's criminal trial.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief concerning the truth of the allegations contained in this paragraph.

52. The false statements provided by Turner, Nichols, and McCoy were the lynchpin of the state's case against Mr. Jackson.

**ANSWER:**   Deny

## Deliberate Suppression of Crime Scene Evidence

53. In addition to withholding the identity of Witness A, Defendant Officers also failed to turn over other evidence that exculpated Mr. Jackson.

**ANSWER:**   Deny

54. For example, Defendant Steinberg released the vehicle in which the murder took place to his "star witness", Malaia Turner, before ever providing Jackson's criminal defense attorney the opportunity to inspect the vehicle.

**ANSWER:**    Defendants admit that Steinberg released the vehicle in which the murder took place to an individual designated by Malaia Turner before the vehicle was inspected by the Plaintiff or anyone on his behalf, but deny the remaining allegations contained in this paragraph.

55. In addition, Defendants Steinberg and Bain never downloaded the data contained on three cell phones found inside the vehicle in which Turner was murdered.

**ANSWER:**    Deny that there were three cell phones, but admit the remaining allegations contained in this paragraph.

56. Instead, after taking a cursory glance at each phone, Defendants Steinberg and Bain returned the cell phones to Malaia Turner and Taylor's friend, Dejermaine Pettis. Once more, Mr. Jackson's defense attorney had no opportunity to review the contents of these cell phones.

**ANSWER:**    Defendants admit that the referred to cell phones were returned to individuals whom the Defendants believed to be the owners, but deny the remaining allegations contained in this paragraph.

57. Upon information and belief, Defendant Officers also never sent the shell casings recovered at the scene to the lab for forensic testing.

**ANSWER:**    Deny

### Mr. Jackson's Trial

58. From the moment he was arrested, Mr. Jackson maintained his innocence. On October 8, 2019, Plaintiff stood trial by a jury.

**ANSWER:**    Admit

59. Ms. Nichols took the stand and claimed that she did not see Mr. Jackson with a gun that night, contradicting the statements Defendant Officers had fabricated.

**ANSWER:**    Defendants deny that the Defendants had fabricated any statements or evidence, but admit the remaining allegations contained in this paragraph.

60. Similarly, Ms. McCoy took the stand and testified that her previous statement to Defendant Officers was fabricated, and that she did not see Jackson hand a gun to Campbell.

**ANSWER:**    Defendants deny that the Defendants had fabricated any statements or evidence, but admit the remaining allegations contained in this paragraph.

61. Because the three cell phones found in the murder vehicle as well as the murder vehicle itself were released mere days after the shooting, Mr. Jackson could not present exonerating evidence believed to be contained on the phones and in the murder vehicle.

**ANSWER:**   Deny

62. On October 11, 2019, Plaintiff was acquitted of all charges in connection with the shooting. Though completely innocent of the crimes charged, Mr. Jackson spent 14 months awaiting trial.

**ANSWER:**   Defendants deny that the Plaintiff was innocent of the crimes charged, but admit the remaining allegations contained in this paragraph.

63. Faced with the knowledge that serious prison time would result if he were convicted of first degree murder, Mr. Jackson experienced daily hardship and stress, and additional damages associated with having to live under harsh conditions at the Champaign County Jail.

**ANSWER:**   Deny

64. During this time, Plaintiff not only lost his liberty and connection with family and friends, but also his ability to earn a respectable living and participate in the dignity and liberty that is foundational to meaningful human existence.

**ANSWER:**   Deny

65. Upon information and believe, Campbell is still wanted by the Urbana Police Department for the shooting of Taylor and has yet to be arrested.

**ANSWER:**   Defendants admit that Campbell has not been arrested, but deny the remaining allegations contained in this paragraph.

## COUNT I – 42 U.S.C. §1983
### Deprivation of Liberty without Probable Cause
### (Against Defendant Officers)

66. Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

**ANSWER:**   Defendants incorporate by reference, as though set forth fully herein, the foregoing Paragraphs 1 through 65 of their answer to this Complaint at Law, as their answer to this Paragraph 66.

67. As described more fully above, Defendant Officers, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his liberty without probable cause, in violation of his rights secured by the Fourth and Fourteenth Amendments.

**ANSWER:**   Deny

68. In the manner described more fully above, Defendant Officers, individually, jointly, and in conspiracy with one another, and other still unknown co-conspirators, relied upon witness statements they knew to be false, fabricated reports, and withheld exculpatory evidence to cause the institution and continuation of criminal proceedings against Plaintiff without probable cause.

**ANSWER:**   Deny

69. Defendant Officers initiated and continued judicial proceedings against Plaintiff maliciously, resulting in Plaintiff's detention for approximately fourteen months without probable cause. Absent Defendant Officers' misconduct, the prosecution of Plaintiff could not and would not have been pursued.

**ANSWER:**   Deny

70. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with willful indifference to Plaintiff's clearly established constitutional rights.

**ANSWER:**   Deny

71. As a direct and proximate result of Defendant Officers' conduct, Plaintiff suffered injuries, including but not limited to the loss of liberty and emotional pain and suffering.

**ANSWER:**   Deny

### COUNT II – 42 U.S.C. § 1983
### Failure to Intervene
### (Against Defendant Officers)

72. Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

**ANSWER:**   Defendants incorporate by reference, as though set forth fully herein, the foregoing Paragraphs 1 through 71 of their answer to this Complaint at Law, as their answer to this Paragraph 72.

73. As described more fully above, Defendant Officers, while acting under color of law and within the scope of their employment, during the constitutional violations described herein, stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

**ANSWER:**   Deny

74. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and with willful indifference to Plaintiff's clearly established constitutional rights.

**ANSWER:**    Deny

75. As a direct and proximate result of Defendant Officers' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional pain and suffering.

**ANSWER:**    Deny

**COUNT III – 42 U.S.C. §1983**
**Conspiracy to Deprive Constitutional Rights**
**(Against Defendant Officers)**

76. Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

**ANSWER:**    Defendants incorporate by reference, as though set forth fully herein, the foregoing Paragraphs 1 through 75 of their answer to this Complaint at Law, as their answer to this Paragraph 76.

77. As described more fully above, Defendant Officers, acting in concert with other coconspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit, thereby depriving him of his constitutional rights.

**ANSWER:**    Deny

78. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed amongst themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER:**    Deny

79. In furtherance of their conspiracy, each of these co-conspirators committed overt acts as described more fully above and were otherwise willful participants in joint activity.

**ANSWER:**    Deny

80. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and with willful indifference to Plaintiff's clearly established rights.

**ANSWER:**    Deny

81. As a direct and proximate result of Defendant Officers' misconduct, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional pain and suffering.

**ANSWER:**    Deny

## COUNT IV – State Law Claim
## Malicious Prosecution
## (Against Defendant Officers)

82. Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

**ANSWER:**     Defendants incorporate by reference, as though set forth fully herein, the foregoing Paragraphs 1 through 81 of their answer to this Complaint at Law, as their answer to this Paragraph 82.

83. Defendant Officers charged Plaintiff knowing those charges lacked probable cause. Defendant Officers made statements to prosecutors with the intent of instituting and continuing judicial proceedings.

**ANSWER:**     Deny

84. Defendant Officers cause Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause, resulting in injury.

**ANSWER:**     Deny

85. Defendant Officers procured false statements, fabricated evidence, and withheld exculpatory evidence in bad faith. Defendant Officers were aware that no true or reliable evidence implicated Plaintiff in the murder of Martez Taylor.

**ANSWER:**     Deny

86. Defendant Officers also failed to investigate evidence that would have implicated the actual perpetrator.

**ANSWER:**     Deny

87. The criminal proceedings against Plaintiff were terminated in his favor.

**ANSWER:**     Admit

88. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and with malice and reckless indifference to the rights of others.

**ANSWER:**     Deny

89. As a direct and proximate result of Defendant Officers' misconduct, Plaintiff suffered injuries, including but not limited to emotional pain and suffering.

**ANSWER:**     Deny

14

**COUNT V – State Law Claim**
**Intentional Infliction of Emotional Distress**
**(Against Defendant Officers)**

90. Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

**ANSWER:**    Defendants incorporate by reference, as though set forth fully herein, the foregoing Paragraphs 1 through 89 of their answer to this Complaint at Law, as their answer to this Paragraph 90.

91. As described more fully above, the acts and conduct of Defendant Officers were extreme and outrageous.

**ANSWER:**    Deny

92. Defendant Officers' actions were rooted in an abuse of power or authority, and were undertaken with the intent to cause, or were in reckless disregard of, the probability that their conduct would cause severe emotional distress to Plaintiff.

**ANSWER:**    Deny

93. As a direct and proximate result of Defendant Officers' actions, Plaintiff suffered and continues to suffer emotional distress.

**ANSWER:**    Deny

**COUNT VI – State Law Claim**
**Civil Conspiracy**
**(Against Defendant Officers)**

94. Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

**ANSWER:**    Defendants incorporate by reference, as though set forth fully herein, the foregoing Paragraphs 1 through 93 of their answer to this Complaint at Law, as their answer to this Paragraph 94.

95. As described more fully above, Defendant Officers, acting in concert with each other and with other individuals, known and unknown, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER:**    Deny

96. In furtherance of the conspiracy, one or more of the co-conspirators engaged in and facilitated one or more overt acts and were otherwise willful participants in joint activity, including

but not limited to the malicious prosecution of Plaintiff and the intentional infliction of emotion distress upon Plaintiff.

**ANSWER:**   Deny

97. The misconduct described in this Count was undertaken intentionally, with malice and reckless indifference to the rights of others.

**ANSWER:**   Deny

98. As a direct and proximate result of Defendant Officers' conspiracy. Plaintiff suffered damages, including emotional pain and suffering.

**ANSWER:**   Deny

**COUNT VII – State Law**
***Respondeat Superior* Claim**
**(Against City of Urbana & City of Champaign)**

99. Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

**ANSWER:**   Defendants incorporate by reference, as though set forth fully herein, the foregoing Paragraphs 1 through 98 of their answer to this Complaint at Law, as their answer to this Paragraph 99.

100. Defendant Officers Jeffrey Steinberg, Duane Smith, Matthew Bain, Elizabeth Alfonso, Dave Roesch, Michael Cervantes, James Kerner, Matthew Quinley, and Jay Loschen were, at certain times material to this complaint, employees of Defendant City of Urbana, and were acting within the scope of their employment.

**ANSWER:**   Admit

101. Defendant Officers' acts which violated state law are directly chargeable to Defendant City of Urbana under state law pursuant to *respondeat superior*.

**ANSWER:**   Defendants admit that the City of Urbana is responsible for the acts of its officers under the doctrine of *respondeat superior*, but deny the remaining allegations contained in this paragraph.

102. Defendant Officer Dave Griffet was, at certain times material to this complaint, an employee of Defendant City of Champaign, and was acting within the scope of his employment.

**ANSWER:**   Defendants make no response to the allegations contained in this paragraph, as they are not directed against these Defendants.

103. Defendant Griffet's acts which violated state law are directly chargeable to Defendant City of Champaign under state law pursuant to *respondeat superior*.

**<u>ANSWER:</u>**    Defendants make no response to the allegations contained in this paragraph, as they are not directed against these Defendants.

### COUNT VIII – State Law
### Statutory Indemnification Claim
### (Against City of Urbana & City of Champaign)

104. Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully restated herein.

**<u>ANSWER:</u>**    Defendants incorporate by reference, as though set forth fully herein, the foregoing Paragraphs 1 through 103 of their answer to this Complaint at Law, as their answer to this Paragraph 104.

105. Defendant Officers Jeffrey Steinberg, Duane Smith, Matthew Bain, Elizabeth Alfonso, Dave Roesch, Michael Cervantes, James Kerner, Matthew Quinley, and Jay Loschen were, at certain times material to this complaint, employees of Defendant City of Urbana and were acting within the scope of their employment.

**<u>ANSWER:</u>**    Admit

106. Under 745 ILCS 10/9-102, the City of Urbana must pay any tort judgment for compensatory damages that is adjudicated against Defendant Officers.

**<u>ANSWER:</u>**    Admit

107. Defendant Officer Dave Griffet was, at certain times material to this complaint, an employee of Defendant City of Champaign and was acting within the scope of his employment.

**<u>ANSWER:</u>**    Defendants make no response to the allegations contained in this paragraph, as they are not directed against these Defendants.

108. Under 745 ILCS 10/9-102 the City of Champaign may pay any tort judgment for compensatory damages that is adjudicated against Defendant Griffet.

**<u>ANSWER:</u>**    Defendants make no response to the allegations contained in this paragraph, as they are not directed against these Defendants.

WHEREFORE, the Defendants, THE CITY OF URBANA, ILLINOIS, a municipal corporation, JEFFERY STEINBERG, DUANE SMITH, MATTHEW BAIN, ELIZABETH ALFONSO, and MATTHEW QUINLEY, deny that they engaged in any conduct which deprived

the Plaintiff of any rights secured by the Constitution or state law; deny that the Plaintiff is entitled to any compensation; deny that Plaintiff is entitled to punitive damages, costs or attorneys' fees; and request that judgment be entered in their favor and against the Plaintiff.

## JURY DEMAND

THE CITY OF URBANA, ILLINOIS DEFENDANTS demand a jury trial.

## AFFIRMATIVE DEFENSES

NOW COME the Defendants, CITY of URBAN, JEFFERY STEINBERG, DUANE SMITH, MATTHEW BAIN, ELIZABETH ALFONSO, and MATTHEW QUINLEY, by and through one of their attorneys, WILLIAM W. KURNIK, and, for their affirmative defenses to the Complaint at Law of the Plaintiff, Cory Jackson, state as follows:

### FIRST AFFIRMATIVE DEFENSE
#### (Defense to Count I and Count III – Individual Defendants)

In connection with all of the acts and conduct of the individual Defendants in investigating the murder of Martez Taylor, including, but not limited to, obtaining the warrant for the arrest of the Plaintiff, interviewing witnesses, and providing information to the prosecutor, and also including all of the acts, conduct and omissions referred to in the Complaint, no reasonably competent police officer would have concluded that probable cause to arrest and detain the Plaintiff was lacking or that the individual Defendants deprived the Plaintiff of any rights secured by the Constitution, and the individual Defendants are entitled to qualified immunity.

### SECOND AFFIRMATIVE DEFENSE
#### (Defense to Count II and Count III – Individual Defendants)

In connection with all of the acts and conduct of the individual Defendants in investigating the murder of Martez Taylor, including, but not limited to, obtaining the warrant for the arrest of the Plaintiff, interviewing witnesses, and providing information to the prosecutor, and also including all of the acts, conduct and omissions referred to in the Complaint, no reasonably

18

competent police officer would have concluded that the actions of other Defendants in this case were unconstitutional nor would any reasonably competent police officer conclude that the failure of any individual Defendant to intervene was unconstitutional, and the individual Defendants are entitled to qualified immunity.

### THIRD AFFIRMATIVE DEFENSE
**(Defense to State Law Claims, Counts V through VII – All Defendants)**

Counts V through VII are barred by the one-year statute of limitations applicable to those counts, 745 ILCS 10/8-101.

### FOURTH AFFIRMATIVE DEFENSE
**(Defense to Count IV – All Defendants)**

The Plaintiff was, in fact, guilty of the offenses for which he was charged.

### FIFTH AFFIRMATIVE DEFENSE

Following his arrest, the Plaintiff, through his attorney, waived his preliminary hearing during which he had the opportunity to challenge whether probable cause existed to arrest and detain him, and therefore he is estopped from arguing that his arrest and detention deprived him of liberty under the Fourth and Fourteenth Amendments.

WHEREORE, the Defendants, JEFFERY STEINBERG, DUANE SMITH, MATTHEW BAIN, ELIZABETH ALFONSO, and MATTHEW QUINLEY, request that judgment be entered in their favor and against the Plaintiff, Cory Jackson, in connection with the foregoing affirmative defenses.

Respectfully submitted by,

/s/ William W. Kurnik
WILLIAM W. KURNIK, Attorney #01550632
One of the Attorneys for the Defendants, CITY OF URBANA, ILLINOIS, JEFFERY STEINBERG, DUANE SMITH, MATTHEW BAIN, ELIZABETH

ALFONSO, and MATTHEW QUINLEY

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2020, the foregoing **ANSWER TO PLAINTIFF'S COMPLAINT AT LAW AND AFFIRMATIVE DEFENSES WITH JURY DEMAND BY DEFENDANTS CITY OF URBANA, JEFFREY STEINBERG, DUANE SMITH, MATTHEW BAIN, ELIZABETH ALFONSO, AND MATTHEW QUINLEY** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants.

Shneur Z. Nathan, snathan@nklawllp.com

Avi Tzvi Kamionski, akamionski@nklawllp.com

Natalie Yetunde Adeeyo, nadeeyo@nklawllp.com

David E. Krchak, DEK@ThomasMamer.com

Justin Nathaniel Brunner, JNB@ThomasMamer.com

William W. Kurnik, bkurnik@khkklaw.com, kstocco@khkklaw.com

Matthew S. Clark, mclark@khkklaw.com, lgreenberg@khkklaw.com

Michael J. Atkus, matkus@khkklaw.com, lgreenberg@khkklaw.com

/s/ William W. Kurnik
WILLIAM W. KURNIK, Attorney #01550632

KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
Attorneys for THE CITY OF URBANA, ILLINOIS,
JEFFERY STEINBERG, DUANE SMITH,
MATTHEW BAIN, ELIZABETH ALFONSO, and
MATTHEW QUINLEY
5600 North River Road, Suite 600
Rosemont, Illinois 60018-5114
Telephone:     847-261-0700
Facsimile:     847-261-0714
E-Mail:        bkurnik@khkklaw.com