2240/20-7628.NU

UNITED STATES DISTICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| CORY JACKSON,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF URBANA, ILLINOIS; a municipal corporation; THE CITY OF CHAMPAIGN, ILLINOIS, a municipal corporation; JEFFERY STEINBERG; DUANE SMITH; MATTHEW BAIN; ELIZABETH ALFONSO; DAVE ROESCH; MICHAEL CERVANTES; JAMES KERNER; MATTHEW QUINLAY; JAY LOSCHEN; DAVE GRIFFET, and UNKNOWN EMPLOYEES OF THE CITY OF URBANA,<br><br>    Defendants. | Case No.: 2:20-cv-02054-CSB-EIL<br><br>JUDGE COLIN S. BRUCE<br><br>MAGISTRATE JUDGE LONG |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT AT LAW BY
<u>DEFENDANTS ROESCH, CERVANTES, KERNER, AND LOSCHEN</u>**

NOW COME the Defendants, DAVE ROESCH, MICHAEL CERVANTES, JAMES KERNER, and JAY LOSCHEN, by and through their attorneys, WILLIAM W. KURNIK and MICHAEL J. ATKUS of KNIGHT HOPPE KURNIK & KNIGHT, LTD., and submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint at Law of the Plaintiff, Cory Jackson, and state as follows:

1

**INTRODUCTION**

This case arise out of the pre-trial detention of the Plaintiff in Champaign County Jail following his arrest and subsequent acquittal on first degree murder charges. Plaintiff's Complaint at Law is organized into eight (8) counts against ten (10) police officers and two (2) municipalities, and purports to set forth claims under 42 U.S.C. §1983 for deprivation of liberty without probable cause (Count I), failure to intervene (Count II), conspiracy (Count III) against the individual Defendants, as well as supplemental state law claims for malicious prosecution (Count IV), intentional infliction of emotional distress (Count V), and civil conspiracy (Count VI) against the individual Defendants. Finally, the Complaint at Law seeks *respondeat* superior liability against the municipal Defendants for the state law claims (Count VII) and statutory indemnification (Count VIII).

As argued more fully below, the Complaint at Law fails to plausibly suggest entitlement to relief against these Defendants. The Complaint at Law, with respect to these Defendants, relies exclusively and impermissibly on group pleading, and fails to set forth any factual allegations to plausibly suggest that they were personally involved in any illegal conduct that deprived Plaintiff of his constitutionally protected rights or otherwise caused him to suffer damages.

**SUMMARY OF ALLEGATIONS**

1. **The Parties.**

Cory Jackson ("Plaintiff") is a thirty-two (32) year-old United States citizen. Complaint, ¶ 9.

The City of Urbana and the City of Champaign are both municipal entities organized under the laws of the State of Illinois. Comp. ¶¶ 10, 11.

At all relevant times, Jeffrey Steinberg ("Detective Steinberg"), Duane Smith ("Detective Smith"), Matthew Bain ("Detective Bain"), Elizabeth Alfonso ("Detective Alonso"), Michael Cervantes ("Detective Cervantes"), Dave Roesch ("Detective Roesch"), Matthew Quinley ("Detective Quinley"), Jay Loschen ("Sergeant Loschen"), and James Kerner ("Detective Kerner") were Urbana Police Officers acting under color of law within their authority as duly appointed officers by the Urbana Police Department. Comp. ¶ 12.

At all times relevant, Dave Griffet ("Detective Griffet") was a Champaign Police Officer acting under color of law within his authority as a duly appointed officer by the Champaign Police Department. Comp. ¶ 13.

### 2. Martez Taylor is Murdered.

At approximately 12:42 A.M. on July 21, 2018, Martez Taylor ("Taylor") was shot and killed in the driveway of a townhome in the 1900 block of East Florida Avenue in Urbana, Illinois. Comp. ¶ 16. Just prior to the shooting, Taylor got into a physical fight with Keith Campbell ("Campbell") during a party at the townhome, after he accidentally bumped into a heavily intoxicated Campbell. Comp. ¶ 17. At the time that Taylor and Campbell fought inside the townhome, Plaintiff was on the back patio of the townhome with other partygoers. Comp. ¶ 17.

3

After the fight, Campbell exited out the back door of the townhome, while Taylor exited out the front door, walked over to his cousin Malaia Turner's ("Turner") Mitsubishi Gallant that was parked in the driveway, and got into the rear driver seat of the car and shut the door Comp. ¶¶ 18-20. Not long after, shots were fired into the rear driver side window of the Mitsubishi, striking Taylor three times. Comp. ¶ 20. The shooter fled immediately after the last shot fired. Comp. ¶ 20.

Plaintiff had no involvement in Taylor's murder. At the time the shots were fired, he was walking outside to his car. Comp. ¶ 21.

Following the shooting, Taylor was transported by Vincent Mosley ("Mosley") to Carle Hospital in a white Chrysler 300. Comp. ¶ 23. Mosley parked his car in front of the ambulance bay and Officer Hurley helped get Taylor out of the car and into the hospital. Comp. ¶ 26. Taylor died shortly thereafter. Comp. ¶ 26.

### 3. Investigation of Taylor's Murder

Minutes after the shooting, METCAD dispatched to officers that a man had been shot at 1905 East Florida Avenue, and Urbana Police Officers Paige Bennett, Sarah Links, Bryan Fink, John Franquemont, Sergeant Jennifer Difanis and other officers responded to the crime scene. Comp. ¶ 22. The white Mitsubishi Gallant in which Taylor was shot was towed to 704 Glover Street to be processed for evidence. Comp. ¶ 24.

Several Urbana police officers responded to Carle Hospital, including Officers Jared Hurley, Walker, Sergeant Loschen, Detective Bain, and Detective Quinley. Comp. ¶ 25. Sergeant Loschen told Detective Bain that he would like to photograph

and process the Chrysler 300, and then return it to Mosley. Comp. ¶ 27. Detective Bain gave him permission to do so. Comp. ¶ 27. Sergeant Loschen photographed and inspected Mosley's Chrysler 300 and immediately released it to Mosley, who left the area. Comp. ¶ 28. Sergeant Loschen released this vehicle before it was ever tested for forensic evidence or examined by Plaintiff or his attorney. Comp. ¶ 28.

While at Carle Hospital, Detectives Bain, Quinley, and Steinberg spoke with Turner, who told Detective Bain and other Defendant Officers that she did not actually see the shooter but that she believed it was Plaintiff. Comp. ¶ 29. Based on Turner's statements indicating her lack of actual personal knowledge and their knowledge that her account was inconsistent with the physical evidence, Defendant Officers knew that Ms. Turner's speculation regarding Plaintiff being the shooter was unreliable. Comp. ¶ 30. Defendant Officers had Turner provide them with a Facebook photograph of Plaintiff. Comp. ¶ 32. Detective Bain and Officer Joseph Cassidy issued a stop order to neighboring police agencies, directing that Plaintiff be located and arrested. Comp. ¶ 32. Defendant Officers met with Turner multiple times in the lead-up to the trial, continuing to pressure her to find more witnesses to recite the same story she gave implicating Plaintiff, and feeding her information in an effort to build up her credibility. Comp. ¶ 34.

In the early morning hours of July 21, 2018, Detective Griffet received a phone call from a witness who stated that Campbell shot Taylor at a party in Urbana. Comp. ¶¶ 35-36. Detective Griffet then shared this information with Defendant Officers. Comp. ¶ 37. However, the Defendant Officers disregarded the account of

5

the witness and buried his or her identity even though it exculpated Plaintiff. Comp. ¶ 37. Detective Griffet fabricated a police report claiming that he did not know the identity of the witness. Comp. ¶38. Even after Plaintiff's criminal defense attorney obtained a court order compelling Detective Griffett to disclose the identity of the witness, Detective Griffett still failed to disclose this critical and exculpatory information. Comp. ¶ 38.

In the days following Taylor's murder, Detectives Steinberg, Bain, Quinley, Cervantes, Alfonso, and Smith interviewed a number of witnesses, including Wendy Driver ("Driver"), Wardell Lawrence, Mosley, and Dejermaine Pettis, none of whom could identify the shooter. Comp. ¶ 40. One or more of these witnesses, including Driver, told Defendant Officers that Turner and her sister (Alisha Turner) were not in a position to actually see the shooting of Taylor. Comp. ¶ 41.

On July 24, 2018. Detectives Alfonso and Smith interviewed Yasmine Nichols ("Nichols") at the Urbana Police Department, provided her with a single photo of Plaintiff, and coerced her into providing a knowingly false account that Plaintiff was not the shooter, but that he was an accomplice who handed the shooter the gun. Comp. ¶ 43. On September 17, 2019, Nichols recanted the false statement and said that she did not see Plaintiff with the gun that night, nor did she see him pass a gun to anyone. Comp. ¶ 44. On or about September 19, 2019, Allen Williams and Nichols recorded Facebook live videos indicating that witnesses were paid, threatened, or coerced into providing a statement implicating Plaintiff as the shooter. Defendant Officers were aware of these Facebook videos, yet continued to try and rely upon the

false account of Nichols in order to continue the criminal proceedings against Plaintiff. Comp. ¶ 45.

On July 24 and 25, 2018, Shakeyla McCoy ("McCoy") told Detectives Bain and Steinberg that she was not in a position to be able to make any identifications with respect to the shooting of Taylor. Comp. ¶ 47. Detectives Bain and Steinberg fabricated a statement from McCoy that she witnessed Campbell shoot Taylor after Plaintiff handed him the gun. Comp. ¶ 47. On September 20, 2019, McCoy recanted the false statement and admitted that did not actually see Plaintiff hand anyone a gun that evening. Comp. ¶ 48.

On September 16, 2019, Turner recanted her previous statement to the police and told Defendant Officers that, contrary to her speculation on the night of the shooting, she did not see Plaintiff shoot the gun. Comp. ¶ 49. Turner also told Defendant Officers that she "did not want to hurt the chances of a conviction." Comp. ¶ 49. Defendant Officers then fed Turner information about the statements made by other witnesses in their investigation, encouraging her to provide another false account: this time, a false account that Plaintiff handed the gun to the shooter rather than actually fired the gun himself. Comp. ¶ 50.

Defendant Officers also failed to turn over other evidence that exculpated Plaintiff. Comp. ¶ 53. Specifically, Detective Steinberg released the vehicle in which the murder took place to Turner, before ever providing Plaintiff's criminal defense attorney the opportunity to inspect the vehicle; Detectives Steinberg and Bain never downloaded the data contained on three cell phones found inside the vehicle in which

7

Turner was murdered, but instead, after taking a cursory glance at each phone, returned them to Turner and Dejermaine Pettis, leaving Plaintiff's defense attorney had no opportunity to review their contents, and; Defendant Officers never sent the shell casings recovered at the scene to the lab for forensic testing. Comp. ¶¶ 54-56.

### 4. Plaintiff's Criminal Trial

On October 8, 2019, Plaintiff stood trial by a jury. Comp. ¶ 58. Nichols testified that she did not see Plaintiff with a gun that night. Comp. ¶ 59. McCoy testified that her previous statement to Defendant Officers was fabricated, and that she did not see Plaintiff hand a gun to Campbell. Comp. ¶ 60. Because the three cell phones found in the Mitsubishi as well as the Mitsubishi itself were released mere days after the shooting, Plaintiff could not present exonerating evidence believed to be contained on the phones and in the Mitsubishi. Comp. ¶61. On October 11, 2019, Plaintiff was acquitted of all charges in connection with the shooting. Comp. ¶ 62. Plaintiff was detained for fourteen (14) months in Champaign County Jail from his arrest until his acquittal. Comp. ¶¶ 6, 62-63.

## ARGUMENT

### I. Standard of Review.

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "A claim

has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Detailed factual allegations are not required, but a plaintiff's complaint may not merely state "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Finally, "allegations that state 'legal conclusions' … are not entitled to the assumption of truth." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 (7th Cir. 2015), quoting *Iqbal*, 129 S.Ct. 1937.

### II. The Complaint at Law Fails to State a Plausible Entitlement to Relief Against Defendants Roesch and Kerner.

The Complaint at Law "alleges no specific act or conduct on the part of" Detective Roesch and Detective Kerner. *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). As such, "the complaint [against them] is properly dismissed." *Id.* The Complaint at Law merely names them in the caption, identifies them as employees/officers of the Urbana Police Department, and alleges that they acted within the scope of their employment and under the color of state law. Without some more specific factual allegations concerning how their actions or inactions caused or contributed to Plaintiff's alleged deprivations of constitutional rights and/or claims for damages, the claims asserted against them cannot be fairly characterized as plausible as opposed to merely conceivable. *See Beaman v. Souk*, 2011 WL 832506, *5 (C.D. Ill. Mar. 3, 2011) ("claims against each, individual, Defendant must be

9

plausible on its face and not merely conceivable."); *see also Span v. Melvin*, 2018 WL 2944152, at *2 (C.D. Ill. June 12, 2018)("Plaintiff has listed several other individuals in the list of Defendants, but … failed to mention their involvement in the body of his complaint.")

### III. The Complaint at Law Fails to State a Plausible Entitlement to Relief Against Defendants Cervantes and Loschen.

Where a Complaint alleges that the Defendants engaged in conduct "just as consistent with lawful conduct as it is with wrongdoing," then the Complaint fails to plausibly suggest entitlement to relief and is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Here, the Complaint at Law's minimal allegations concerning the conduct of Detective Cervantes and Sergeant Loschen are just as consistent with lawful conduct as they are with any conceivable wrongdoing. With respect to Detective Cervantes, the Complaint at Law merely alleges that he participated in interviews of witnesses that could not identify who shot Martez Taylor. Sergeant Loschen is alleged to have processed a vehicle for evidence and returned it to its owner. These allegations remain just "as consistent with a lawful investigation as an illegal conspiracy." *Id.*

Alternatively, based on these threadbare allegations, Detective Cervantes and Sergeant Loschen remain entitled to qualified immunity. "A public employee is entitled to immunity in § 1983 litigation unless, at the time of the events in question, "clearly established" law would have made apparent to any public employee that his or her acts violated the Constitution." *Weiland v. Loomis*, 938 F.3d 917, 918 (7th Cir.

2019). Plaintiffs cannot point to any case law that would have told them what the Constitution required in the situation they faced. *See id. at 920* (clearly established law "tells a public employee what the Constitution requires in the situation that employee faces.") To put a finer point on it, no case law would have advised Detective Cervantes that interviewing ignorant witnesses violated the Constitution, and no case law would have advised Sergeant Loschen that processing evidence and returning it to its owner violated the Constitution.

### IV. The Complaint at Law's Group Pleading Fails to Comply with Fed. R. Civ. P. 8(a).

The Complaint at Law's reliance on group pleading cannot save the purported claims against Defendants Roesch, Kerner, Cervantes, and Loschen. The Complaint at Law resorts to leveling multiple factual allegations at "Defendant Officers." For example, it alleges that the Defendant Officers charged Plaintiff without probable cause to institute judicial proceedings without probable cause and procured false statements, fabricated evidence and withheld exculpatory evidence in bad faith and failed to investigate evidence (Comp. ¶¶82-86). "This type of group pleading is not sanctioned by Rule 8(a) and should be discouraged: these claims should be summarily dismissed." *Beaman*, 2011 WL 832506 at *5. This is because "grouping defendants obscures a plaintiff's allegations against specific defendants thereby avoiding the pleading requirement to allege facts showing the personal involvement of each defendant." *Harrison v. Wexford Health Sources Inc.*, 2018 WL 659862, *2 (C.D. Ill. Feb. 1, 2018), citing *Owens v. Evans*, 878 F.3d 559, 561 (7th Cir. 2017). "Under the circumstances of this case, where the identities of the … officers are known to

Plaintiff at the pleading stage, to require Plaintiff to also allege the personal involvement of each defendant makes sense and surely is within the knowledge of Plaintiff." *Harrison*, 2018 WL 659862 at *2. *See also Brooks v. Ross*, 2008 WL 5082995 (N.D. Ill. Nov. 25, 2008) (unreported), *aff'd*, 578 F.3d 574 (7th Cir. 2009) (dismissing claims where the plaintiff alleged, in connection with his Section 1983 claims, that "one or more" of the defendants provided false or misleading information in conjunction with Plaintiff's indictment, arrest, and prosecution because it failed to adequately connect illegal acts with specific defendants).

### V. The Complaint at Law's Boilerplate Conspiracy Allegations Fail to State a Claim Against these Defendants.

Similarly, the Complaint at Law's reliance on general boilerplate allegations of conspiracy cannot save the purported claims against Defendants Roesch, Kerner, Cervantes, and Loschen. To state a claim for § 1983 conspiracy, a plaintiff must allege "(1) an express or implied agreement among defendants to deprive plaintiff of his constitutional rights and (2) actual deprivation of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). A plaintiff cannot satisfy his pleading burden with a bare allegation of conspiracy. *See Conney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). At a minimum, a complaint must plead allegations concerning the parties, general purpose, and approximate date of the conspiracy. *See Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). The Complaint at Law here utterly fails to identify any conduct by any

of these Defendants to plausibly demonstrate that they engaged in an overt acts in furtherance of the generally alleged conspiracy.

## CONCLUSION

For all the above-argued reasons, the Defendants, DAVE ROESCH, JAMES KERNER, MICHAEL CERVANTES, and JAY LOSCHEN, respectfully request that this Honorable Court dismiss the claims against them with prejudice.

Respectfully submitted by

/s/ William W. Kurnik
WILLIAM W. KURNIK, #01550632
E-Mail: bkurnik@khkklaw.com

/s/ Michael J. Atkus
MICHAEL J. ATKUS, #6285666
E-Mail: matkus@khkklaw.com

KNIGHT HOPPE KURNIK & KNIGHT, LTD.
Attorneys for Defendants DAVE ROESCH,
MICHAEL CERVANTES, JAMES KERNER
and JAY LOSCHEN
5600 North River Road, Suite 600
Rosemont, Illinois 60018
Telephone: 847/261-0700
Facsimile: 847-261-0700

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2020, the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT AT LAW BY DEFENDANTS ROESCH, CERVANTES, KERNER, AND LOSCHEN** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants.

Shneur Z. Nathan, snathan@nklawllp.com

Avi Tzvi Kamionski, akamionski@nklawllp.com

Natalie Yetunde Adeeyo, nadeeyo@nklawllp.com

David E. Krchak, DEK@ThomasMamer.com

Justin Nathaniel Brunner, JNB@ThomasMamer.com

William W. Kurnik, bkurnik@khkklaw.com, kstocco@khkklaw.com

Matthew S. Clark, mclark@khkklaw.com, lgreenberg@khkklaw.com

Michael J. Atkus, matkus@khkklaw.com, lgreenberg@khkklaw.com

/s/ William W. Kurnik
WILLIAM W. KURNIK, #01550632

KNIGHT HOPPE KURNIK & KNIGHT, LTD.
Attorneys for Defendants DAVE ROESCH,
MICHAEL CERVANTES, JAMES KERNER
and JAY LOSCHEN
5600 North River Road, Suite 600
Rosemont, Illinois 60018
Telephone:  847/261-0700
Facsimile:  847-261-0700
E-Mail:  bkurnik@khkklaw.com
matkus@khkklaw.com