E-FILED
Monday, 04 May, 2020 08:18:14 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CORY JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF URBANA, ILLINOIS; A municipal corporation; THE CITY OF CHAMPAIGN, ILLINOIS, a municipal Corporation, JEFFREY STEINBERG, DUANE SMITH, MATTHEW BAIN, ELIZABETH ALFONSO, DAVE ROESCH, MICHAEL CERVANTES, JAMES KERNER, MATTHEW QUINLEY, JAY LOSCHEN, DAVE GRIFFET, and UNKOWN EMPLOYEES OF THE CITY OF URBANA,<br><br>Defendants. | ) | Case No. 20-cv-02054-CSB-EIL<br><br>Judge Colin S. Bruce<br><br>Magistrate Judge Long |

**PLAINTIFF'S COMBINED RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTIONS TO DISMISS**

NOW COMES Plaintiff Cory Jackson ("Plaintiff"), by and through his undersigned attorneys, Nathan & Kamionski LLP, and in response to Defendants' Motions for Dismissal filed by Defendants Dave Griffet, and the City of Champaign, Illinois, (hereinafter "Champaign Defendants") and joined by Defendants Dave Roesch, Michael Cervantes, James Kerner, and Jay Loschen (hereinafter "Urbana Defendants") (Griffett and Champaign Defendants are collectively referred to herein as "Defendant Officers"), and states as follows:

## Factual Background

This case arises out of the pre-trial detention of the Plaintiff, Cory Jackson, in Champaign County Jail following his arrest and subsequent prosecution on first degree murder charges. These charges were the direct result of serious misconduct by officers of the Urbana and Champaign Police Departments tasked with investigating Martez Taylor's murder. Comp. ¶2. Due to the

Defendant Officers' misconduct the Plaintiff spent 14 months in custody awaiting trial until he was ultimately acquitted. Comp. ¶6. Plaintiff was cleared of these baseless charges on October 11, 2019 and is now rightfully seeking redress for injuries he suffered at the hands of the City of Urbana, the City of Champaign, and Defendant Police Officers. Comp. ¶6.

**Murder of Maretz Taylor**

At approximately 12:42 A.M. on July 21, 2018, Maretz Taylor ("Taylor") was shot and killed in the driveway of a townhouse in the 1900 block of East Florida Avenue in Urbana, Illinois. Comp. ¶16. Plaintiff was walking to his car at the time and had no involvement whatsoever in Taylor's murder. Urbana Motion to Dismiss, pg. 4; Comp. ¶21. Just prior to the shooting, Taylor got into a physical altercation with Keith Campbell ("Campbell") during a party at the townhome, after he accidentally bumped into a heavily intoxicated Campbell. Comp. ¶17. At the time that Taylor and Campbell fought inside the townhome, Plaintiff was on the back patio of the townhome with other partygoers, removed from the altercation. Comp. ¶17.

After the fight, Campbell exited out of the back door of the townhome, while Taylor exited out of the front door, and got into the rear driver seat of his cousin Malaia Turner's ("Turner") Mitsubishi Gallant which was parked in the driveway. Comp. ¶¶18-20. Not long after, shots were fired into the rear driver side window of the Mitsubishi, striking Taylor three times. Comp. ¶20. The shooter fled immediately after the last shot fired. Comp. ¶20.

Following the shooting, Urbana Police Officers Paige Bennett, Sarah Links, Bryan Fink, John Franquemont, Sergeant Jennifer Difanis, and other unknown officers responded to the crime scene. Comp. ¶22. While officers arrived at the scene, Taylor was being transported by Vincent Mosley ("Mosley") to Carle Hospital in his Chrysler 300. Comp. ¶23. Several Urbana Police Officers responded to Carle Hospital, including Officers Jared Hurley and Walker, Defendant

Loschen, and Defendant Detectives Bain and Quinley. Comp. ¶25. Mosley parked his car in front of the ambulance bay and Officer Hurley helped get Taylor out of the car and into the hospital. Comp. ¶26. Taylor died shortly thereafter. Comp. ¶26.

**Investigation of Maretz Taylor's Murder**

Defendant Officers never possessed requisite probable cause to pursue Plaintiff as the alleged shooter causing Taylor's death. Comp. ¶30. In fact, even today, the state's current position is that Campbell was the true killer and he remains a wanted fugitive. Comp. ¶31.

1. **Defendants Knowingly Obtain an Unreliable Account from Malaia Turner**

While at Carle Hospital, Defendants Bain, Quinley, and Steinberg spoke with Turner, Taylor's cousin. Comp. ¶29. Turner told Defendant Bain and other Defendant officers that she did not actually see the shooter but that she believed it was Jackson. Comp. ¶29. Urbana Defendants admit that "Turner's statements indicated her lack of actual personal knowledge . . . that her account was inconsistent with the physical evidence" and that "Defendant Officers knew that Turner's speculation regarding Plaintiff being the shooter was unreliable." Urbana Motion to Dismiss, pg. 5; Comp. ¶30.

Despite not having probable cause based on Turner's speculative statements, Defendant Officers sought out Plaintiff by issuing a stop order to neighboring police agencies, directing that Plaintiff be located and arrested. Comp. ¶¶30, 32.

Urbana Defendants admit that "Defendant officers met with Turner multiple times in the lead-up to the trial, continuing to pressure her to find more witnesses to recite the same story she gave implicating Plaintiff, and feeding her information in an effort to build up her credibility." Urbana Motion to Dismiss, pg. 5; Comp. ¶34.

2. **Defendants Bury the Identity of "Witness A"**

During the early morning hours on the night the shooting occurred, July 21, 2018, Defendant Officers received information from a witness to Taylor's murder that Campbell was the shooter and the Plaintiff was not involved. Comp. ¶35. Specifically, Champaign Police Sergeant Defendant Griffet received a phone call on July 21, 2018, from Witness A that Campbell shot Taylor at a party in Urbana. Urbana Motion to Dismiss, pg. 5; Comp. ¶¶35-36. Detective Griffet shared this information with Defendant Officers who "disregarded the account of the witness and buried his or her identity even though it exculpated Plaintiff." Urbana Motion to Dismiss, pg. 5-6; Comp. ¶37.

Further, Defendant Griffet fabricated a police report claiming that he did not know the identity of the witness and "even after Plaintiff's criminal defense attorney obtained a court order compelling Defendant Griffet to disclose the identity of the witness, Griffet still failed to disclose this critical and exculpatory information." Urbana Motion to Dismiss, pg. 6; Comp. ¶38.

Rather than properly investigate the shooting and pursue Campbell as the only legitimate suspect, Defendant Officers made a deliberate plan to suppress Witness A's identity and proceed with knowingly false statements from witnesses implicating the Plaintiff. Comp. ¶39.

**3. Defendants Fabricate Statements from Yasmine Nichols and Shakeyla McCoy**

In the days that followed the shooting, Defendant Steinberg, Bain, Quinley, Cervantes, Alfonso, and Smith interviewed a number of witnesses, including Wendy Driver ("Driver"), Wardell Lawrence, Mosley, and Dejermaine Pettis, none of whom could identify the shooter. Comp. ¶40. Urbana Defendants admit that "Driver, told Defendant Officers that Turner and her sister (Alisha Turner) were not in a position to actually see the shooting of Taylor." Urbana Motion to Dismiss, pg. 6; Comp. ¶41. During the investigation, Defendants Steinberg, Bain, Quinley, and

other Defendant Officers procured through improper means the knowingly false statements from Turner, Yasmine Nichols ("Nichols"), Shakeyla McCoy ("McCoy"), and Alisha Turner.

"On July 24, 2018, Detective Alfonso and Smith interviewed Nichols at the Urbana Police Department . . . and coerced her into providing a knowingly false account that Plaintiff was not the shooter, but that he was an accomplice who handed the shooter the gun." Urbana Motion to Dismiss, pg. 6; Comp. ¶43. Further, "On September 17, 2019, Nichols recanted the false statement and said that she did not see Plaintiff with the gun that night, nor did she see him pass a gun to anyone." Urbana Motion to Dismiss, pg. 6; Comp. ¶44. Shortly after Nichols's recantation, "on or about September 19, 2019, Allen Williams and Nichols recorded Facebook live videos indicated that witnesses were paid, threatened, or coerced into providing a statement implicating Plaintiff as the shooter." Urbana Motion to Dismiss, pg. 6; Comp. ¶45. Defendant Officers were aware of these videos declaring their misconduct yet continued to try and rely upon the false account of Nichols in order to continue the criminal proceedings against Plaintiff. Comp. ¶45.

Much like the false statement Defendant Officers procured from Nichols, Defendant Officers also procured a false statement of involvement from her sister, McCoy. Comp. ¶46. "On July 24 and 25, 2018, McCoy told Detective Bain and Steinberg that she was not in a position to be able to make any identifications with respect to the shooting of Taylor." Urbana Motion to Dismiss, pg. 7; Comp. ¶47. "Detectives Bain and Steinberg fabricated a statement from McCoy that she witnessed Campbell shoot Taylor after Plaintiff handed him the gun" and that on "September 20, 2019, McCoy recanted the false statement and admitted that [she] did not actually see Plaintiff hand anyone a gun that evening." Urbana Motion to Dismiss, pg. 7; Comp. ¶48.

**4. Defendants Fabricate Malaia Turner's "Revised" Account**

In addition to the above specified fabricated evidence, “on September 16, 2019 Turner recanted her previous statement to the police and told Defendant Officers that, contrary to her speculation on the night of the shooting, she did not see Plaintiff shoot the gun.” Urbana Motion to Dismiss, pg. 7; Comp. ¶49. Tuner told Defendant Officers that she “did not want to hurt the chances of a conviction.” Comp. ¶49. “Defendant Officers then fed Turner information about the statements made by other witnesses in their investigation, encouraging her to provide another false account: this time, a false account that Plaintiff handed the gun to the shooter rather than actually fired the gun himself.” Urbana Motion to Dismiss, pg. 7; Comp. ¶50. Upon information and belief, Turner changed her statements about the nature of Plaintiff’s supposed involvement in Turner’s death no less than four times before the Plaintiff’s criminal trial. Comp. ¶51.

**5. Defendants’ Deliberate Suppression of Crime Scene Evidence**

“Defendant Officers also failed to turn over other evidence that exculpated Plaintiff.” Urbana Motion to Dismiss, pg. 7; Comp. ¶53. On the night of the shooting, Defendant Loschen photographed and inspected Mosley’s Chrysler 300, which transported an injured Taylor to the hospital. Comp. ¶¶27-28. After his search, Defendant Loschen immediately released the vehicle to Mosley and Mosley left the area. Comp. ¶28. Urbana Defendants acknowledge and admit that Defendant Loschen released this vehicle before it was ever tested for forensic evidence or examined by Plaintiff or his criminal defense attorney. Urbana Motion to Dismiss, pg. 5, 7; Comp. ¶28.

“Detective Steinberg released the vehicle in which the murder took place to Turner, before ever providing Plaintiff’s criminal defense attorney the opportunity to inspect the vehicle.” Urbana Motion to Dismiss, pg. 7; Comp. ¶54. Further, “Detectives Steinberg and Bain never downloaded the data contained on three cell phones found inside the vehicle in which Turner was murdered,

but instead, after taking a cursory glance at each phone, returned them to Turner and Dejermaine Pettis, leaving Plaintiff's defense attorney . . . no opportunity to review their contents." Urbana Motion to Dismiss, pg. 7-8; Comp. ¶¶55-56. Defendant Officers also never sent the shell casings recovered at the scene to the lab for forensic testing. Urbana Motion to Dismiss, pg. 8; Comp. ¶57.

**Plaintiff's Criminal Trial**

From the moment he was arrested and throughout the 14 months in custody awaiting his trial, Plaintiff maintained that he was innocent. Comp. ¶¶58, 62. On October 8, 2019, Plaintiff stood trial by a jury who found him not guilty and acquitted him of all charges. Comp. ¶62.

At trial, Nichols testified that she did not see Plaintiff with a gun that night, contradicting the statements Defendant Officers had fabricated. Comp. ¶59. McCoy testified that her previous statement to Defendant Officers was fabricated, and that she did not see Plaintiff hand a gun to Campbell. Comp. ¶60. "Because the three cell phones found in the Mitsubishi as well as the Mitsubishi itself were released mere days after the shooting, Plaintiff could not present exonerating evidence believed to be contained on the phones and in the Mitsubishi." Urbana Motion to Dismiss, pg. 8; Comp. ¶61.

On October 11, 2019, Plaintiff was acquitted of all charges in connection with the shooting after spending 14 months in custody awaiting trial. Comp. ¶62. Plaintiff experienced daily hardship and stress associated with the fear of facing serious prison time if wrongly convicted of Taylor's murder as well as additional damages associated with having to live more than a year under harsh conditions at the Champaign County Jail. Comp. ¶63.

Upon information and belief due to the misconduct of Defendant Officers, Maretz Taylor's true killer, Campbell, is still a free man wanted by the Urbana Police Department since July of 2018. Comp. ¶65.

## Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

A court addressing a motion to dismiss may consider the plaintiff's response to a motion to dismiss and other statement and materials that are referenced in the complaint and that are essential to the plaintiff's claims. *Heng v. Heavner, Beyers & Mihlar, LLC,* 849 F.3d 348, 353-54 (7th Cir. 2017) (finding that a court may, when ruling on a motion to dismiss, consider materials or elaboration in a plaintiff's trial brief or response to a motion to dismiss consistent with the pleadings).

## ARGUMENT

Even though Plaintiff had no involvement in the shooting of Taylor, Defendant Officers maliciously deprived him of 14 months of his liberty without probable cause through the use of fabricated witness statements and by deliberately withholding the identity of an exculpatory

witness. This misconduct by Defendant Officers was exposed at Plaintiff's criminal trial and he was acquitted. The Complaint describes this misconduct in detail, naming the witnesses and officers involved, the dates of the statements, and describing the recantations. In some instances, the Complaint also utilizes a collective identifier of "Defendant Officers" to describe all of the individual defendant officers together. Defendants misconstrue this defined term and attempt to argue that Plaintiff has not sufficiently alleged the personal involvement of certain Defendants. These arguments should be rejected because they ignore the allegations actually made in the Complaint and improperly seek to shift the burden of persuasion to Plaintiff contrary to the "light most favorable" standard applicable under Fed. R. Civ. P. 12(b)(6).

At this early stage of litigation, a complaint need not include all facts necessary to prove a particular claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002). The Seventh Circuit has reiterated that "[plaintiff's] pleading burden should be commensurate with the amount of information available to them" and discovery can be used later to flesh out the legal theories underlying a claim. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 528 (7th Cir. 2015) (internal citations omitted).

## I. Defendants Apparently Do Not Dispute that Plaintiff Adequately Pled Claims for Deprivation of Liberty, Failure to Intervene, Malicious Prosecution and IIED Against Officers Steinberg, Smith, Bain and Alfonso.

The Complaint in this case establishes that Defendant Officers jumped to a speculative conclusion that Plaintiff was involved in Taylor's murder even though there was a complete absence of probable cause for them to make such a conclusion. Defendants Bain, Quinley, and Steinberg "and other Defendant Officers" obtained an account from Malaia Turner establishing that she had no opportunity to see the shooter. Comp. ¶30. Defendant Griffet as early as July 21, 2018 obtained a statement from Witness A which fully established that "Campbell was the shooter

and [Plaintiff] was not involved." Comp. ¶35. Defendant Officers then worked together with Defendant Griffett to bury the identify of Witness A, going so far as to have Defendant Griffett fabricate a police report claiming he did not know the identity of Witness A in order to circumvent a court order compelling the disclosure of the identity. Comp. ¶¶36-39.

As if the above misconduct was not enough, "Defendants Steinberg, Bain, Quinley, Cervantes, Alfonso and Smith" fabricated a knowingly false statements from Yasmine Nichols, Shakeyla McCoy, and Alisha Turner. Comp. ¶¶40, 42. Defendants Alfonso and Smith coerced Nichols into identifying Plaintiff as the shooter through the use of an individual photo even though they knew it was false. Comp. ¶43. Defendants Bain and Steinberg and other Defendant Officer coerced a similarly unreliable statement from Ms. McCoy. Comp. ¶47.

Given the above allegations, which must be taken as true at this stage, it does not appear that Defendants Steinberg, Smith, Bain and Alfonso are even arguing that they should be dismissed from this case. And that is for good reason. Plaintiff's allegations easily meet the low pleading threshold required by Fed. R. Civ. P. 8(a). These allegations more than sufficiently establish a plausible basis for relief on Plaintiff's claims for deprivation of liberty without probable cause, failure to intervene, malicious prosecution, and IIED. *Horton v. City of Rockford,* 2019 WL 3573566, at *3 (N.D. Ill. Aug. 6, 2019) (denying dismissal of deprivation of liberty without probable cause claim finding group pleading contained enough factual detail to put Defendant Officers on notice); *Taylor v. Wexford Health Services, Inc.,* 2016 WL 3227310, at *5 (N.D. Ill. June 13, 2016) ("claims for failure to intervene typically involve questions of fact for the injury, not appropriate for resolution at the motion to dismiss stage."); *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 987-88 (N.D. Ill. 2009) (denying dismissal of malicious prosecution claim finding complaint gave adequate notice to Defendant Officers); *Thomas v. City of Blue Island,* 178 F.

Supp. 3d 646, 656 (N.D. Ill. 2016) (denying dismissal of IIED claim in which Defendant Officers abused their authority by deliberately failing to properly investigate).

## II. In Light Of The High Degree of Specificity Alleged In The Complaint and the Early Stage of this Case, Plaintiff Appropriately Utilizes the Collective Identifier of "Defendant Officers" and It Is Not Improperly Vague.

Ignoring the numerous and specific facts contained in the Complaint, Defendants attempt to argue that Plaintiff's Complaint violates Rule 8(a) by inappropriately grouping Defendants together without differentiation or explanation as to what each person did or did not do. This argument does not withstand scrutiny, however. The Complaint in fact specifies numerous instances of police misconduct with respect to Defendants Steinberg, Smith, Bain, Alfonso, Cervantes, Loschen, and Griffet. See, e.g., Comp. ¶¶ 27-28, 40. Contrary to Defendants' allegations, Plaintiff's Complaint does not violate Rule 8(a) because referring to a subset of Defendants is sufficient at the pleading stage. "The Defendants, and not [the Plaintiff], are in possession of the knowledge of precisely which of them, if any, interrogated, manipulated, threatened, or coerced [witnesses] into giving false testimony." *Wilson v. City of Chi.,* 2009 WL 3242300, at *2 (N.D. Ill. Oct. 7, 2009).

Rule 8(a) requires only a "short plaint statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555. Although liability under § 1983 requires that a defendant be personally responsible for the alleged constitutional violation (*Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983)), Rule 8(a) is "not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer." *Hyung Seok Koh v. Graf,* 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013).

Rather, "an allegation directed at multiple defendants can be adequate to plead personal involvement." *Rivera v. Lake Cty.,* 974 F. Supp. 2d 1179, 1194 (N.D. Ill. 2013) (citing *Brooks v. Ross,* 578 F.3d 574, 582 (7th Cir. 2009)). At the pleading stage, "a plaintiff may generally name those responsible for alleged violations," including by grouping Defendants into subgroups of individuals who are alleged to have acted jointly. *Vandenburgh v. Bannockburn Police Officer Robert Ogden*, 2016 WL 403663, at *5 (N.D. Ill. Feb. 3, 2016).

## III. Plaintiff Pled Sufficient Facts to Allege Personal Involvement of Defendants Griffet, Loschen, Cervantes, Roesch, and Kerner.

Individual Defendants argue that Plaintiff's Complaint fails to include adequate facts to allege personal involvement for Defendants Roesch, Kerner, Cervantes, Loschen, and Griffet. Defendants' contentions of Plaintiff's insufficient pleading are inaccurate and misrepresent the pleading standards required in this court. To meet the pleading standard "a plaintiff is not required to provide detailed factual allegations." *See Alexander v. U.S.,* 721 F.3d 418 (7th Cir. 2006).

### A. The Complaint Adequately States a Plausible Entitlement to Relief Against Urbana Defendants Loschen, Cervantes, Roesch, and Kerner.

"A complaint need not allege all, or any, of the facts logically entailed by the claim, and it certainly need not include evidence." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008). Instead, a complaint contains enough detail if it includes allegations that show that "it is plausible, rather than merely speculative, that he is entitled to relief." *Id.* at 1083 (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Mann v. Vogel,* 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678). In applying this standard, the court must also assume the trust of all well-pleaded fact, construing the

allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McMath v. City of Gary,* 976 F.2d 1026, 1031 (7th Cir. 1992).

Here, all Urbana Defendants were involved in the investigation of Maretz Taylor's murder and the unlawful detention of Plaintiff for a crime he did not commit. Specifically, on the night of the incident, Defendant Loschen photographed Mosley's Chrysler 300, which transported Maretz Taylor's injured body to the Carle Hospital. Comp. ¶¶ 25, 28. Urbana Defendants admit that Defendant Loschen then inappropriately released the vehicle to Mosley who left the area. Urbana Motion to Dismiss, pg. 5; Comp. ¶28. Urbana Defendants also admit that this error in protocol meant Defendant "Loschen released this vehicle before it was ever tested for forensic evidence or examined by Plaintiff or his attorney." Urbana Motion to Dismiss, pg. 5; Comp. ¶28.

Further, Plaintiff's Complaint is adequately plead against Defendants Roesch, Kerner, and Cervantes. The Complaint properly alleges that Defendant Cervantes was involved in the witness interviews. Comp. ¶40. Defendants Roesch, Kerner, and Cervantes are also included within the term "Defendant Officers" as it is defined in the Complaint. Comp. ¶15. As such, they are included within the group of officers who are alleged to be involved in procuring knowingly unreliable statements from Turner, Nichols, and McCoy. Comp. ¶ 29, 35, 44, 46. They are similarly included within the group of officers who buried the identity of Witness A. Comp. ¶37.

Plaintiffs are not required "to connect every single alleged instance of misconduct in the complaint to every single specific officer." *Hyung Seok Koh v. Graf,* 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013). Instead, "a plaintiff may generally name those responsible for the alleged violations" and adequately put Defendant Officers on notice of the claims against them. *VanDenburgh v. Bannockburn Police Officer Robert Ogden,* 2016 WL 403663, at * 5 (N.D. Ill. Feb. 3, 2016). While Plaintiff will ultimately have to demonstrate how each individual Defendant

Officer was personally responsible for his unlawful detention, he is not required to do so at the pleading stage without discovery. *See Kuri v. City of Chicago,* 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014) (plaintiff allowed to direct allegation at multiple defendants at pleading stage where plaintiff may not be aware of "which individual committed which parts of the alleged misconduct before the benefit of discovery").

### B. Complaint Adequately States a Plausible Entitlement to Relief Against Defendant Sergeant Griffet.

Plaintiff easily satisfies his pleading standard regarding Defendant Griffet because the allegations contained in the complaint are sufficient to provide Defendant Griffet with notice of the claims against him, which is all that is required at this stage of the proceedings. *See Twombly,* 550 U.S. at 555. Specifically, Defendant Griffet was instrumental in hiding the identity of Witness A and assisting Urbana Defendants in falsely implicating the Plaintiff of a crime he did not commit. Comp. ¶¶35-38.

Shortly after the shooting, "Detective Griffet received a phone call from a witness who stated that Campbell shot Taylor" and then later "fabricated a police report claiming that he did not know the identity of the witness." Urbana Motion to Dismiss, pg. 6; Comp. ¶¶ 35, 38. Defendant Griffet's misconduct included fabricating evidence and failing to disclose critical and exculpatory information. Urbana Motion to Dismiss, pg. 6; Comp. ¶38.

Defendant Griffet's motion to dismiss relies on the premise that Plaintiff's complaint fails to allege that Defendant Griffet "knew about [the] alleged misconduct, 'facilitate[d] it, approved[d] it, condone[d] it, or turned[d] a blind eye" to it. Champaign Motion to Dismiss, pg. 3 (quoting *Carmondy v. Bd. of Trustees of Univ. of Illinois,* 893 F.3d 397, 403 (7th Cir. 2018) (internal quotation marks omitted)). This argument improperly shifts the burden on a motion to dismiss and attempts to take the facts in a light most favorable to movant Griffet. Plaintiff is specifically

alleging that Defendant Griffet received information from that exculpated Plaintiff, allowed Urbana Defendant Officers to disregard the account, and assisted in burying the identity of Witness A, knowing they were more than a mere "tipster from the community." Champaign Motion to Dismiss, pg. 5; Comp. ¶¶35-38. Defendant Griffet did facilitate, approve, condone, and turn a blind eye to Defendant Officers' misconduct and the unlawful detention of Plaintiff.

## IV. Plaintiff Pleaded Facts Sufficient to Support A Conspiracy Claim in Count III.

Plaintiff's Complaint clearly articulates the conspiracy engaged in by Defendants to deprive Plaintiff of his constitutional rights, by attempting to frame him for the murder of Maretz Taylor.

"Under…section 1983…civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, the principal element of which is an agreement between the parties to inflict a wrong against…another, and an overt act that results in damage." *Patrick v. City of Chicago,* 213 F. Supp. 3d 1033, 1057 (N.D.IL 2016) (internal citations omitted). "An express agreement among all the conspirators is not a necessary element." *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979)). Direct proof of such an agreement, however, is rarely available since conspiracies are by their very nature secretive." *Patrick*, 213 F. Supp. 3d at 1057. "The existence of a conspiracy may be inferred through the combination of common sense and circumstantial evidence." *Id.*

Plaintiff's Complaint clearly articulates a plausible conspiracy claim because at the pleading stage "[s]pecific facts are not necessary; the statement need only give the [Defendant Officers] fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (internal quotation omitted)). Plaintiff alleges Defendant Officers including Defendants Roesch, Kerner, Cervantes, Loschen, and Griffet acted together, to cause Plaintiff to be unlawfully detained and face trial, against fabricated evidence and coerced witness statements.

Comp. ¶¶77-81. Specifically, Defendants acted in concert to hide or destroy exculpatory evidence from Plaintiff and his defense counsel, for example the identify of Witness A, two critical vehicles containing forensic evidence, and the contents of three cellphones believed to contain exculpatory evidence. Comp. ¶¶ 28, 53-56.

Further, multiple witnesses have recanted the statements Defendant Officers fabricated from them. Plaintiff adequately alleges that "witnesses were paid, threatened, or coerced into providing a statement implicating Jackson, [the Plaintiff,] as the shooter." Urbana Motion to Dismiss, pg. 6; Comp. ¶45. Specifically, witnesses Maila Turner, Yasmine Nichols, Allen Williams, and Shakeyla McCoy recanted false statements and admitted that they did not see the Plaintiff shoot or assist in the shooting of Maretz Taylor. Comp. ¶¶ 44-45, 48-49. Clearly, these facts are sufficient for the conspiracy claim to move forward to discovery.

WHEREFORE, Plaintiff request this Court to deny in its entirety the motion to dismiss filed by Defendants Roesch, Cervantes, Kerner, and Loschen. Additionally, Plaintiff respectfully requests this Court to dismiss the City of Champaign and Defendant Griffet's motion to dismiss in its entirety.

Respectfully submitted,

*/s/ Natalie Y. Adeeyo*
Natalie Y. Adeeyo, Atty. #6323542
NATHAN & KAMIONSKI LLP
33 W. Monroe, Suite 1830
Chicago, Illinois 60603
(312) 612-1955
snathan@nklawllp.com

**CERTIFICATE OF SERVICE**

I, Natalie Y. Adeeyo, an attorney herby certify that on the date stamped on the above margin, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Natalie Y. Adeeyo*
Natalie Y. Adeeyo