E-FILED
Monday, 29 March, 2021  12:07:28 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| CORY JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE CITY OF URBANA ILLINOIS, a | ) |
| municipal corporation, THE CITY OF | ) |
| CHAMPAIGN ILLINOIS, a municipal | ) |
| corporation; JEFFREY STEINBERG; | ) |
| DUANE SMITH; MATTHEW BAIN; | )      20-CV-2054 |
| ELIZABETH ALFONSO; DAVE | ) |
| ROESCH; MICHAEL CERVANTES; | ) |
| JAMES KERNER; MATTHEW | ) |
| QUINLEY; JAY LOSCHEN; DAVE | ) |
| GRIFFET, and UNKNOWN | ) |
| EMPLOYEES OF THE CITY OF | ) |
| URBANA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>O R D E R</u>

Plaintiff, Cory Jackson, filed his Complaint (#1) on March 20, 2020. Plaintiff filed suit pursuant to 28 U.S.C. § 1983, alleging violations of his constitutional rights. Plaintiff also brings supplemental state law claims.

Before the court is Defendant Urbana Officers Michael Cervantes, James Kerner, Jay Loschen, and Dave Roesch's Motion to Dismiss (#26) and Memorandum in Support (#27), and Defendants Officer Dave Griffet and the City of Champaign's Motion to Dismiss (#28) and Memorandum in Support (#29). Plaintiff has filed a combined

Response (#32). Defendant Urbana Officers' dismissal motion is DENIED and Defendants Officer Griffet and the City of Champaign's dismissal motion is GRANTED.

## I.  BACKGROUND

Plaintiff was charged and prosecuted in Illinois state court for the murder of Martez Taylor, and for discharging a firearm. Plaintiff alleges he did not commit these crimes. Plaintiff was in custody for fourteen months awaiting trial. At the trial, which ended on October 11, 2019, Plaintiff was acquitted.

A. <u>The Parties</u>

Cory Jackson is Plaintiff in this case.

At times relevant to this case, Defendants Jeffrey Steinberg, Duane Smith, Detective Michael Bain, Elizabeth Alfonso, Michael Cervantes, Dave Roesch, Detective Matthew Quinley, Sergeant Jay Loschen, and James Kerner were City of Urbana Police Officers acting under color of law and within their authority as officers for Urbana.

At times relevant to this case, Plaintiff alleges that Unknown Employees of Urbana acted under color of law within their authority as Urbana Police Officers.

At times relevant to this case Defendant Dave Griffet was a Champaign Police Detective acting under color of law and within his authority as an officer for Champaign.

Plaintiff refers to all the named and unknown Defendant Police Officers as "Defendant Officers."

B. Facts

The facts are drawn from the Complaint (#1) and are accepted as true for the

purposes of this order. *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1095 (7th Cir. 2015).

At approximately 12:42 a.m. on July 21, 2018, Martez Taylor was shot and killed

in the driveway of a townhome in the 1900 block of East Florida Avenue in Urbana,

Illinois. Just prior to the shooting, Taylor got into a physical fight with Keith Campbell

during a party at the townhome, after Taylor accidentally bumped into Campbell.

Campbell was heavily intoxicated at the time. After Taylor and Campbell's fight,

Campbell exited the back door of the townhome and Taylor exited the front door.

During the altercation between Taylor and Campbell, Plaintiff was on the back

patio of the townhome with other attendees of the party.

Taylor walked to his cousin Malaia Turner's Mitsubishi Gallant, which was

parked in the driveway, and got in the driver's side rear seat. Not long after Taylor got

in the car, shots were fired into the rear driver's side window of the Mitsubishi, striking

Taylor three times. The shooter fled immediately after firing the final shot.

Plaintiff was not involved in Taylor's murder, and has always maintained his

innocence. Plaintiff was walking outside to his car as the shots that struck Taylor were

fired.

Minutes after the shooting, the Champaign County 911 operator, METCAD, sent

a dispatch to officers that a man had been shot at 1905 East Florida Avenue, and Urbana

Police Officers Paige Bennett, Sarah Links, Bryan Fink, John Franquemont, Sergeant Jennifer Difanis, and other unknown officers responded to the crime scene.

"On information and belief," Defendant Officers never sent the shell casings recovered at the crime scene to the lab for forensic testing.

While officers were arriving at the crime scene, Vincent Mosley was driving Taylor to Carle Hospital in a white Chrysler 300. Several Urbana Police Officers responded to Carle Hospital, including Jared Hurley, an officer whose last name was Walker, and Defendants Loschen, Bain, and Quinley. There were also University of Illinois Police Officers present at the hospital. Mosley parked the Chrysler 300 in front of the ambulance bay at Carle Hospital. Officer Hurley helped get Taylor out of the car and into the hospital. Taylor died shortly thereafter.

Defendant Loschen told Defendant Bain that he would like to photograph and process the Chrysler 300 and then return it to Mosley. Defendant Bain permitted this action. Defendant Loschen photographed and inspected the Chrysler 300, but did not test it for forensic evidence or allow Plaintiff or his attorney to examine it. After his search, Defendant Loschen immediately released the vehicle to Mosley, who left the area.

The Mitsubishi Gallant in which Taylor was shot was towed to 704 Glover Street to be processed for evidence. Defendant Steinberg released the Mitsubishi back to Malaia Turner before providing Plaintiff's criminal defense attorney the opportunity to inspect the vehicle. Three cell phones were found in the Mitsubishi. Defendants

Steinberg and Bain never downloaded the data contained on the phones, but rather after "taking a cursory glance at each phone" returned the cell phones to Turner and Martez Taylor's friend, Dejermaine Pettis. Plaintiff's criminal defense attorney did not have an opportunity to review the contents of these three cell phones. At his criminal trial, Plaintiff could not present exculpatory evidence believed to be on the phones and in the Mitsubishi.

On the night of the shooting, July 21, 2018, while at Carle Hospital, Defendants Bain, Quinley, and Steinberg spoke with Malaia Turner. Turner told Defendant Bain and other Defendant Officers that she did not actually have the opportunity to see the shooter but that she believed it was Plaintiff. Based on Turner's statements indicating she lacked personal knowledge of the shooter's identity, and their knowledge that Turner's account was inconsistent with the physical evidence, Defendant Officers knew that Malaia Turner's speculation regarding Plaintiff being the shooter was unreliable and did not create probable cause.

As of the filing of this lawsuit, the State's current position is that Campbell, who got in a fight with Taylor just before Taylor was murdered, was Taylor's killer. Campbell is a wanted fugitive.

Defendant Officers had Turner provide them with a Facebook photograph of Plaintiff. Defendant Bain and Officer Joseph Cassidy issued a "stop order" to neighboring police agencies, directing that Plaintiff be located and arrested. "On information and belief," Defendant Officers met with Turner multiple times in the

5

leadup to Plaintiff's criminal trial, continuing to pressure her to find more witnesses to recite the same story she gave at the hospital implicating Plaintiff. On each occasion Defendant Officers fed Turner information in an effort to build up her credibility.

Defendants Loschen and Quinley knew Plaintiff prior to the investigation of Taylor's murder.

During the early morning hours of July 21, 2018, the night the shooting occurred, Defendant Officers received information from a witness to Taylor's murder that Campbell was the shooter and Plaintiff was not involved. Defendant Officers have concealed the identity of this witness, who Plaintiff refers to in the Complaint as "Witness A."

Specifically, Defendant Champaign Police Detective David Griffet received a phone call on July 21, 2018, from Witness A, informing him that Keith Campbell shot Taylor at a party in Urbana. Griffet then shared this information with Defendant Officers. Because Witness A's account did not match Defendant Officers' false hypothesis that Plaintiff was the shooter, they disregarded the account of Witness A and buried his or her identity even though it exculpated Plaintiff.

Defendant Griffet then "fabricated a police report claiming that he did not know the identity of Witness A." Plaintiff's criminal defense attorney got a court order compelling Defendant Griffet to disclose the identity of Witness A. Defendant Griffet "still failed to disclose this critical and exculpatory information."

6

Plaintiff alleges that instead of "properly" investigating the shooting by pursuing Campbell "as the only legitimate suspect," Defendant Officers "made a deliberate plan to suppress Witness A's identity and proceed with knowingly false statements from witnesses implicating" Plaintiff in Taylor's murder.

In the days that followed, Defendant Officers Steinberg, Bain, Quinley, Cervantes, Alfonso, and Smith interviewed several witnesses, including Wendy Driver, Wardell Lawrence, Vincent Mosley, and Dejermaine Pettis, none of whom could identify the shooter. "On information and belief," one or more of these witnesses, including Wendy Driver, told Defendant Officers that Malaia Turner and her sister "were not in a position to actually see the shooting of Taylor."

On July 24, 2018, at approximately 12:00 p.m., Defendants Alfonso and Smith interviewed Yasmine Nichols at the Urbana Police Department, provided her with a single photograph of Plaintiff, and coerced Nichols into providing a knowingly false account that claimed that Plaintiff was not the shooter, but that he was an accomplice who handed the shooter the gun.

On September 17, 2019, Yasmine Nichols recanted the false statement that was coerced by Defendants Alfonso and Smith. Yasmine Nichols said that she did not see Plaintiff with the gun that night, nor did she see Plaintiff pass a gun to anyone. On or about September 19, 2019, Allen Williams and Yasmine Nichols recorded Facebook live videos indicating that witnesses were paid, threatened, or coerced into providing a statement implicating Plaintiff as the shooter. Defendant Officers were aware of these

7

Facebook videos and still continued to try to rely on the false account that they procured from Yasmine Nichols, in order to continue the criminal case against Plaintiff.

On July 24 and 25, 2018, Shakeyla McCoy told Defendants Bain and Steinberg that she was not in a position to be able to make any identifications with respect to the shooting of Taylor. Defendants Bain and Steinberg fabricated a statement from McCoy that said she witnessed Campbell shoot Taylor after Plaintiff handed him the gun.

On September 20, 2019, McCoy recanted the false statement that Defendants Bain and Steinberg procured, and admitted she did not see Plaintiff hand anyone a gun that evening.

On September 16, 2019, Malaia Turner recanted her previous statement to the police and told Defendant Officers that, contrary to her speculation on the night of the shooting, July 21, 2018, she in fact did not see Plaintiff shoot the gun. However, Turner told Defendant Officers that she "did not want to hurt the chances of a conviction." "Upon information and belief," Defendant Officers then fed Turner information about the statements made by other witnesses in their investigation, thereby encouraging her to provide another false account, this time that Plaintiff handed the gun to the shooter rather than actually firing the gun himself. "Upon information and belief," Turner changed her statements about the nature of Plaintiff's involvement in Taylor's death at least four times before Plaintiff's trial.

Plaintiff alleges that the false statements provided by Malaia Turner, Yasmine Nichols, and Shakeyla McCoy were "the lynchpin" of the state's case against Plaintiff.

8

On October 8, 2019, the state's criminal case against Plaintiff came to trial. Yasmine Nichols testified that she did not see Plaintiff with a gun the night Taylor was murdered, contradicting the statements Defendant Officers had fabricated. Shakeyla McCoy testified that her previous statement to Defendant Officers was fabricated and that she did not see Plaintiff hand a gun to Campbell. On October 11, 2019, Plaintiff was acquitted of all charges in connection with Taylor's murder.

Pursuant to 42 U.S.C. §1983, Plaintiff alleges claims for deprivation of liberty without probable cause (Count I), failure to intervene (Count II), and conspiracy (Count III). Plaintiff also alleges supplemental state law claims for malicious prosecution (Count IV), intentional infliction of emotional distress (Count V), and civil conspiracy (Count VI). Counts I through VI are alleged against "Defendant Officers." Finally Plaintiff alleges *respondeat superior* liability (Count VII) and statutory indemnification (Count VIII) against the municipal corporation Defendants.

## II. ANALYSIS

### A.  Motion to Dismiss Legal Standard

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Sloan v. Am. Brain Tumor Assoc.*, 901 F.3d 891, 894 (7th Cir. 2018).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Sloan*, 901 F.3d at 894. However, where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). Although a complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion, and thus, accordingly, threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice. *McReynolds*, 694 F.3d at 885. The plausibility standard calls for a "context-specific" inquiry that requires the court to draw on its judicial experience and common sense. *McReynolds*, 694 F.3d at 885.

B. Certain Urbana Officers' Motion to Dismiss

Defendant Urbana Officers Roesch, Kerner, Cervantes, and Loschen have moved to dismiss Plaintiff's Complaint. Defendant Urbana Officers Steinberg, Smith, Bain, Alfonso, and Quinley have not moved to dismiss the claims against them.

Defendants Roesch, Kerner, Cervantes, and Loschen argue that Plaintiff's use of "group pleading" fails to comply with Federal Rule of Civil Procedure 8(a). Defendants Roesch and Kerner argue there are no specific allegations against them whatsoever. Defendants Cervantes and Loschen argue (1) the allegations against them are just as consistent with lawful conduct as they are with wrongful conduct, and (2) they are

entitled to qualified immunity because no case law could have told them that the Constitution required more than what they did in (a) Cervantes interviewing ignorant witnesses and (b) Loschen processing and returning evidence. Defendants Roesch, Kerner, Cervantes, and Loschen also argue that Plaintiff has failed to allege enough to support his conspiracy claims against them.

Plaintiff responds that his allegations are sufficient, given the specific facts he includes and the liberal pleading standards governing this stage of the case.

1. *Sufficiency of the Allegations in General*

As to Defendant Urbana Officers' arguments based on group pleading, nonspecific allegations, and certain allegations being consistent with lawful conduct, at this early stage of the case, the court finds Plaintiff's allegations against Defendant Urbana Officers are sufficient. Plaintiff identifies specific actions of certain Defendant Urbana Officers. Defendants Roesch, Kerner, Cervantes, and Loschen were all employed by the Urbana Police Department alongside the five other Defendant Urbana Officers who have not moved to dismiss the claims against them. The Urbana Police Department was the agency investigating the Taylor murder. Plaintiff alleges specific wrongdoing by certain Defendant Urbana Officers and alleges repeatedly that all "Defendant Officers" were involved.

Without the benefit of discovery, given Plaintiff's allegations, and given that this group of officers all work together for the jurisdiction that performed the investigation of Taylor's murder, the court finds that dismissal of any individual Defendant Urbana

11

Officer would be premature. As Plaintiff acknowledges, he will ultimately have to prove how each individual Defendant Officer was personally responsible for each of the claims alleged. See *Kuri v. City of Chi.*, 2014 WL 114238, at *7 (N.D. Ill. Jan. 10, 2014) (allegations directed at multiple defendants permissible where the plaintiff may not have been aware of which individual committed which parts of the alleged conduct before the benefit of discovery).

As to the Defendant Urbana Officers, the court finds, accepting the allegations as true, and because this case is at the pleadings stage, Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Defendant Urbana Officers' arguments and authority cited may be reraised at a later stage in the proceedings after the record has been more fully developed "and when the applicable procedural rules permit a more fulsome and searching analysis." See *Access 4 All, Inc. v. Chi. Grande, Inc.*, 2007 WL 1438167, at *1 (N.D. Ill. May 10, 2007).

2. *Whether Defendants Cervantes and Loschen are Entitled to Qualified Immunity*

When a party argues entitlement to qualified immunity at the pleadings stage of a case, the court faces competing maxims.

Rule 8 requires only a short and plain statement of the claim, Fed. R. Civ. P. 8(a), while to correctly assess entitlement to qualified immunity, the court must consider if a constitutional right was clearly established on the particular facts facing the defendant. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (decided at summary judgment).

Therefore, a "complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018); see also *Tamayo v. Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008) ("we have cautioned that the rule that qualified immunity must be resolved at the earliest possible stage must be tempered by the notice pleading requirements of Rule 8.").

Here, more factual development is necessary before the court can determine if any individual Defendant Urbana Officer is entitled to qualified immunity. While entitlement to qualified immunity should be decided at the earliest stage possible, making that decision at the motion to dismiss stage, in this case, would be premature.

3. *Whether Plaintiff's Conspiracy Claims Are Sufficiently Pled*

"To support conspiracy liability under § 1983, [a plaintiff] must allege that '(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights.'" *Gibson v. City of Chi.*, 2020 WL 4349855, at *12 (N.D. Ill. July 29, 2020), citing *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

The court finds, accepting the allegations as true, and based on this matter being at the pleadings stage, Plaintiff has stated a claim for conspiracy against Defendant Urbana Officers that contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The court makes no determination on the merits of Defendants' arguments, and all of Defendants' arguments may be reraised at a later stage in the proceedings where

the record can be more fully developed "and when the applicable procedural rules permit a more fulsome and searching analysis." See *Access 4 All*, 2007 WL 1438167, at *1 (N.D. Ill. May 10, 2007).

C. <u>Officer Griffet and the City of Champaign's Motion to Dismiss</u>

Defendants Officer Griffet and the City of Champaign raise several arguments against Plaintiff's Complaint.

The allegations related to Defendant Griffet are limited.

Defendant Griffet received a phone call on July 21, 2018, from Witness A that Keith Campbell shot Taylor at a party in Urbana. Defendant Griffet then shared this information with Defendant Officers. Because Witness A's account did not match Defendant Officers' false hypothesis that Plaintiff was the shooter, they disregarded the account of Witness A and buried his or her identity even though it exculpated [Plaintiff].

In addition, Defendant Griffet then fabricated a police report claiming that he did not know the identity of Witness A. Even after [Plaintiff's] criminal defense attorney obtained a court order compelling Defendant Griffet to disclose the identity of Witness A, Defendant Griffet still failed to disclose this critical and exculpatory information.

Rather than properly investigate the shooting and pursue Kevin Campbell as the only legitimate suspect, Defendant Officers made a deliberate plan to suppress Witness A's identity and proceed with knowingly false statements from witnesses implicating [Plaintiff] in the murder.

Complaint (#1) ¶¶ 36-38.

While Plaintiff makes much of asserting that all the individual Defendant Officers (including unknown ones) are encompassed by the term "Defendant Officers," the court finds that assertion is not plausible for Defendant Griffet, who works for a different jurisdiction, the City of Champaign, which was not leading the investigation of

14

Taylor's murder. Indeed, in paragraph 36 of the Complaint, Plaintiff's chosen phrasing

clearly differentiates between Defendant Griffet and Defendant Officers:

> Defendant Griffet then shared this information with Defendant Officers.
> Because Witness A's account did not match Defendant Officers' false
> hypothesis that Plaintiff was the shooter, they disregarded the account of
> Witness A and buried his or her identity even though it exculpated
> [Plaintiff].

Plaintiff does not allege Defendant Griffet shared the information with *the other*

Defendant Officers. Even if he had phrased his Complaint that way, it would not

support a plausible inference that Defendant Griffet had formed a "false hypothesis that

Plaintiff was the shooter," like Defendant Officers did, because Griffet's agency was not

even investigating Taylor's murder.

Further, Plaintiff's Complaint does not allege that Defendant Griffet even *knew*

the identity of Witness A. Plaintiff deploys artful pleading language about Defendant

Griffet "fabricating" a police report that said he did not know Witness A's identity, but

that allegation does not assert that Defendant Griffet actually knew Witness A's

identity. Plaintiff's criminal defense attorney ran this lead down as far as he could,

obtaining a court order that required Defendant Griffet to disclose the identity of

Witness A, yet all Plaintiff alleges is that Defendant Griffet "failed to" disclose it – not

that he ever knew Witness A's identity at all, or, if he did know Witness A's identity,

that he knew that Witness A knew anything beyond what Griffet passed along to

Defendant Officers.

The court must assess Plaintiff's allegations according to its judicial experience and common sense. *McReynolds*, 694 F.3d at 885. Unlike Defendant Urbana Officers discussed earlier in this order, the court finds Plaintiff's allegation that Defendant Griffet was among "Defendant Officers" is not plausible, on the unique allegations and in the unique context of this case. Defendant Griffet worked for a different agency. In the overnight hours following a murder committed in a different jurisdiction, he received a phoned in tip *and passed that tip along to the investigating agency*. He documented (Plaintiff alleges "fabricated") what he did. A judge ordered disclosure of Witness A's identity, and Defendant Griffet did not disclose it.

With that understanding of the facts, the court turns to Defendant Griffet's arguments.

1. *Count I – Wrongful Detention*

Defendant Griffet first argues Plaintiff must proceed on Count I solely pursuant to the Fourth Amendment, not the Fourteenth Amendment.

Plaintiff does not respond to this argument, aside from his blanket assertion that "the allegations contained in the complaint are sufficient to provide Defendant Griffet with notice of the claims against him" and his blanket request that the court "dismiss the City of Champaign and Defendant Griffet's motion to dismiss in its entirety."

For wrongful detention claims, the United States Supreme Court has "jettisoned the malicious-prosecution analogy and the due-process source of the right[.]" *Lewis v. City of Chi.*, 914 F.3d 472, 476 (7th Cir. 2019). Now, "all § 1983 claims for wrongful

pretrial detention —whether based on fabricated evidence or some other defect—" rest "exclusively on the Fourth Amendment" and "not the Due Process Clause" of the Fourteenth Amendment. *Lewis*, 914 F.3d at 478-79. Thus, to the extent Plaintiff is asserting a due process claim under the Fourteenth Amendment, that claim is dismissed with prejudice. Plaintiff's claim may proceed under only the Fourth Amendment.

Next, Defendant Griffet argues Count I is further narrowed by his limited involvement.

Plaintiff responds that, imputing to Defendant Griffet all the conduct alleged against Defendant Officers, and for largely the same reasons asserted as to Defendant Urbana Officers, he has alleged enough to state a claim against Defendant Griffet.

"Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation." *Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 401 (7th Cir. 2018) (internal quotation marks omitted) (decided at summary judgment).

The court finds Plaintiff has not alleged enough to sustain Count I against Defendant Griffet. As discussed above, Plaintiff's allegation that Defendant Griffet was among "Defendant Officers" is not plausible, and, indeed, Plaintiff has not alleged that Griffet knew the identity of the caller or, even if he knew the identity of the caller, knew that the caller was anything aside from a witness and tipster.

Count I is DISMISSED without prejudice as to Defendant Griffet.

2. *Count II – Failure to Intervene*

Defendant Griffet argues Plaintiff has not alleged how Griffet had reason to know of the other officers' misconduct and how he had a realistic opportunity to intervene to prevent harm from occurring.

Reading Plaintiff's argument generously, he argues that Defendant Griffet is improperly seeking to shift the burden to Plaintiff and is taking facts most favorably to himself, rather than Plaintiff, so Plaintiff's failure to intervene claim is adequately pled.

To succeed on a failure to intervene claim, a plaintiff must "demonstrate that the Defendants (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017).

The court again finds Plaintiff's allegations against Defendant Griffet are too sparse to survive even the deferential standard applied at this phase of the case. The court emphasizes that Griffet worked for a different agency than the agency that was investigating Taylor's murder. Plaintiff has failed to put forth any facts to support a plausible inference that Defendant Griffet knew Defendant Urbana Officers were in the alleged process of violating Plaintiff's constitutional rights. Likewise, Plaintiff has failed to put forth any allegations to show Defendant Griffet had a realistic opportunity to prevent Defendant Urbana Officers' actions.

Count II is DISMISSED without prejudice as to Defendant Griffet.

3. *Conspiracy*

Defendant Griffet argues that Plaintiff's threadbare allegations of the elements of a conspiracy claim are insufficient as alleged against him, especially considering Griffet's limited alleged involvement.

Plaintiff again asserts broadly that all the allegations lodged against "Defendant Officers" are enough to state a conspiracy claim against each officer.

"To support conspiracy liability under § 1983, [a plaintiff] must allege that '(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights.'" *Gibson*, 2020 WL 4349855, at *12, citing *Beaman*, 776 F.3d at 510.

For largely the same reasons discussed as to Counts I and II, the court finds Plaintiff's Count III (federal) and Count VI (state) conspiracy claims are insufficient as alleged against Defendant Griffet. Again, Griffet is not plausibly included in "Defendant Officers." Plaintiff's allegations against the Defendant Urbana Officers, while slim, are enough, given the fact that those Defendants all worked for the same agency. However, the court finds that Plaintiff's allegations simply are not enough to avoid dismissal of the conspiracy claims as alleged against Defendant Griffet.

Counts III and VI are DISMISSED without prejudice as to Defendant Griffet.

4. *Count IV State Law Malicious Prosecution*

Defendant Griffet argues Plaintiff has failed to allege that Griffet played a significant role in initiating or continuing the prosecution against Plaintiff, so his malicious prosecution claim must fail.

Plaintiff does not respond to this argument, aside from his blanket assertion that "the allegations contained in the complaint are sufficient to provide Defendant Griffet with notice of the claims against him" and his blanket request that the court "dismiss the City of Champaign and Defendant Griffet's motion to dismiss in its entirety."

To state an Illinois state law claim for malicious prosecution, a plaintiff must allege that the defendant's conduct or actions proximately caused the commencement or continuance of the original criminal proceeding, by alleging that the defendant played a significant role in the plaintiff's prosecution. See *Beaman v. Freesmeyer*, 131 N.E.3d 488, 500 (Ill. 2019).

The court finds Plaintiff's Complaint does not state a claim against Defendant Griffet for Illinois state law malicious prosecution. The court incorporates its discussion of how slight Plaintiff's allegations are, in general, as to Defendant Griffet. Further, the court notes that Plaintiff does not even respond directly to Defendant Griffet's argument on this point. Finally, Plaintiff's own complaint alleges that the "lynchpin" of the state's criminal case against Plaintiff was the coerced and false statements obtained by Defendant Urbana Officers.

Count IV is DISMISSED without prejudice as to Defendant Griffet.

20

5. *Count V – State Law Intentional Infliction of Emotional Distress*

Defendant Griffet argues Plaintiff has not met his burden of alleging willful and wanton conduct sufficient to maintain his state law IIED claim.

Once again, Plaintiff does not respond to this argument, aside from his blanket assertion that "the allegations contained in the complaint are sufficient to provide Defendant Griffet with notice of the claims against him" and his blanket request that the court "dismiss the City of Champaign and Defendant Griffet's motion to dismiss in its entirety."

Illinois law mandates that an IIED claim requires conduct that is "truly extreme and outrageous." *Cairel v. Alderden*, 821 F.3d 823, 835 (7th Cir. 2016) (internal quotation marks omitted).

The court finds that Plaintiff's allegations against Defendant Griffet are insufficient to raise a plausible inference that his actions were "truly extreme and outrageous," for all the reasons already discussed, above.

Count V is DISMISSED without prejudice as to Defendant Griffet.

6. *Respondeat Superior and Indemnification Claims Against Champaign*

Finally, as all of Plaintiff's substantive claims against Defendant Griffet have been dismissed, Plaintiff's state law claims against the City of Champaign for *respondeat superior* liability (Count VII) and statutory indemnification (Count VIII) are also DISMISSED without prejudice.

Defendant Griffet and the City of Champaign's Motion to Dismiss (#28) is GRANTED in full, without prejudice. Plaintiff has 21 days to file an amended complaint against Defendant Griffet and the City of Champaign. If he does not to do so within 21 days, this court's dismissal of Defendants Griffet and Champaign shall be converted to dismissal with prejudice.

IT IS THEREFORE ORDERED THAT:

1) Defendant Urbana Officers Roesch, Kerner, Cervantes, and Loschen's Motion to Dismiss (#26) is DENIED in full.

2) Defendants Officer Griffet and the City of Champaign's Motion to Dismiss (#28) is GRANTED in full. All claims against Defendants Griffet and Champaign are DISMISSED without prejudice. Plaintiff has 21 days to file an amended complaint. If he does not do so the claims against Griffet and Champaign shall be converted to dismissal with prejudice.

3) This matter is referred to the Magistrate Judge for further proceedings consistent with this order.

ENTERED this 29th day of March, 2021.

s/ Colin Stirling Bruce
COLIN S. BRUCE
U.S. DISTRICT JUDGE